774 So.2d 1140 (2000)
Cecil E. ATWOOD, Plaintiff-Appellee,
v.
EWING TIMBER, INC., Defendant-Appellant.
No. 34,045-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 15, 2000.
Rehearing Denied January 18, 2001.
*1142 Bobby L. Culpepper & Associates by Bobby L. Culpepper, Jonesboro, Counsel for Appellant.
Flournoy, Doggett & Losavio by Knight E. Doggett, Alexandria, Counsel for Appellee.
Before BROWN, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Ewing Timber, Inc. ("Ewing"), appeals a judgment awarding the claimant, Cecil Atwood, temporary total disability benefits of $367 per week from October 4, 1998 through April 30, 1999, and from December 1, 1999 continuing until he is released to return to work. The workers' compensation judge (WCJ) also awarded claimant supplemental earnings benefits (SEB) from May 1, 1999 through November 30, 1999, based on claimant's actual earnings during the period. The defendant was ordered to pay all related medical expenses and to reimburse *1143 claimant for travel and pharmacy expenses. For the following reasons, we amend and affirm as amended.

FACTS
On October 2, 1998, the claimant was a statutory employee of Ewing and he worked as a truck driver. While helping to cut logs to complete a load for his truck, the claimant stepped over the log which he had been cutting when another worker using a loader grabbed and lifted an end of the log. According to claimant, the log struck the inside of his leg, lifting his feet off of the ground. The log then fell and struck the claimant in the back of the legs. After delivering the load of logs to the mill, claimant reported the incident to his supervisor, Larry Hatten. When he returned home, the claimant was in pain. Two days later he sought medical treatment for low back pain at the Winn Parish Medical Center emergency room. The claimant filed a disputed claim for compensation and the defendant answered, denying that an on-the-job accident or injury had occurred.
After a hearing, the WCJ issued oral reasons for judgment, finding that the claimant's average weekly wage was $550 and that he had been injured in an accident during the course and scope of his employment. The WCJ, finding that claimant's testimony concerning his injury was credible, determined that claimant was entitled to temporary total disability ("TTD") benefits starting on October 4, 1998, and SEB based on zero earnings, with defendant receiving a credit for any income earned by claimant. The WCJ ordered claimant to submit the amount of his earnings to defendant by a specified date.
Subsequently, judgment was rendered awarding the claimant TTD benefits of $367 per week from October 4, 1998 through April 30, 1999, and from December 1, 1999 continuing until he is released to return to work. The claimant was also awarded SEB from May 1, 1999 through November 30, 1999, based on his actual earnings during the period. The judgment assessed legal interest from the due date of each installment until paid. The defendant was ordered to pay all related medical expenses and to reimburse claimant for travel and pharmacy expenses, together with legal interest. Defendant's motion for modification of judgment and new trial was denied. The defendant appeals the judgment.

DISCUSSION
The defendant contends the trial court erred in finding that an on-the-job accident occurred. Defendant argues that the claimant gave various versions of the incident and failed to establish that a work accident occurred.
The term "accident" is defined as an unexpected actual, identifiable event which at the time produces objective findings of injury. LSA-R.S. 23:1021(1); McConnell v. City of Ruston, 27,154 (La. App.2d Cir.8/23/95), 660 So.2d 100. Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable in light of the record as a whole. Freeman, supra; Stobart v. State, 617 So.2d 880 (La.1993).
Here, although there was some variation in the claimant's descriptions of the incident, he was consistent in the basic details. Claimant consistently stated that after he had cut a log, he stepped over and straddled the log as another worker began picking up the log, which lifted claimant off of his feet. The log then fell, hitting him in the back of the leg. The testimony of the other workers who were present generally corroborates the claimant's description of events.
*1144 Lain Womack, who was working with the claimant, testified that when the loader picked up the log, it "bumped" claimant, who was straddling the log. Lain stated that the log lifted claimant's foot off the ground, causing him to lose his balance and seemingly drop the saw. At trial, Bobby Womack, who was operating the loader, testified that he did not see claimant being lifted off the ground by the raised log. However, Womack acknowledged that in a prior statement, he had said that when he picked up the log, it "might have lifted" claimant off the ground. In addition, Dwight Moody, an employee of Bobby Womack, testified that he was nearby at the time of the accident and saw claimant stumble over a log, but that he did not know if it moved. However, in a prior recorded statement, Moody stated that claimant was stepping over a log when it "hit him on the leg."
The WCJ heard the testimony and weighed the credibility of the witnesses. Based upon this record, we cannot say the WCJ was clearly wrong in finding that claimant experienced an accident within the course and scope of his employment, causing injury for which he sought medical treatment shortly thereafter. The assignment of error lacks merit.

Temporary Total Disability
The defendant contends the WCJ erred in finding that claimant was entitled to temporary total disability ("TTD") benefits. An employee seeking TTD benefits must prove by clear and convincing evidence that he is physically unable to engage in any employment, regardless of its nature, and including employment while working in pain. LSA-R.S. 23:1221(1). To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable. Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/6/95), 665 So.2d 657.
A workers' compensation claimant may prove disability through medical and lay testimony. The WCJ must weigh all of the evidence to determine if the claimant has met his burden of proving temporary total disability. Thomas v. Gould Street Logging, 27,192 (La.App.2d Cir.9/27/95), 661 So.2d 546.
In the present case, the claimant did not produce any medical testimony at trial, but introduced into evidence the medical records of his visits to several physicians. The records of Winn Parish Medical Center show that on October 4, 1998, claimant reported to the emergency room complaining of severe low back pain resulting from a work injury. The physical examination found muscle spasms in the right lumbar paraspinals. The clinical impression was noted as acute myofascial strain of the lumbar region. The attending physician recommended that claimant not report to work for five days.
On October 6, 1998, claimant visited his own physician, Dr. Julio Iglesias. After an examination, Dr. Iglesias diagnosed claimant with lower back syndrome and prescribed pain medication and physical therapy. Dr. Iglesias advised claimant to remain off work until a scheduled MRI was performed on October 19, 1998. However, this MRI was cancelled after Ewing refused to authorize any further medical treatment. On December 17, 1998, an MRI of claimant's lumbar spine was performed at LSU Medical Center (LSUMC). The claimant did not seek any further medical treatment until March 1999, when he returned to LSUMC with a complaint of low back pain. The MRI was reviewed and it failed to show any compressive lesions. Claimant was referred to Dr. Babson Fresh, a neurologist.
The claimant first saw Dr. Fresh in April 1999 complaining of low back pain. Dr. Fresh conducted a physical exam and did not find any muscle spasm of the lumbar spine and there was good range of motion. Dr. Fresh reviewed claimant's December 1998 MRI and reported that although the image was dark, there was normal signal intensity at all disc space *1145 levels and no evidence of disc herniation. In July 1999, claimant returned to Dr. Fresh complaining of continued back pain. Dr. Fresh examined the claimant and noted the lack of any muscle spasm and that his range of motion was "fairly good." As a precaution, Dr. Fresh recommended another MRI to rule out any disc pathology.
The medical records show that Dr. Iglesias prescribed physical therapy for the claimant and restricted him from work until after an MRI was completed on October 19, 1998. Although that MRI was not performed, the claimant eventually obtained an MRI of his lumbar spine on December 17, 1998. That MRI was reported as "unremarkable" by Dr. Fresh. This finding was confirmed by the subsequent MRI ordered by Dr. Fresh, who interpreted the results as an "essentially negative" lumbar MRI and opined that claimant did not have a neurosurgical problem.
The claimant testified that he cannot perform his prior job because he is unable to sit, stand, ride in a truck or hold a saw for an extended period of time without feeling pain in his lower back and right hip. However, as the WCJ noted in her oral reasons for judgment, the medical records do not contain a specific statement by a physician that the claimant is physically unable to work. The only work limitation was the original restriction advised by Dr. Iglesias.
The claimant testified that pain prevented him from performing his prior employment and that the less strenuous yard work and driving he performed in 1999 also increased his low back pain. This testimony is inadequate to satisfy the statute, since working in pain does not entitle claimant to TTD benefits. Based upon the medical records and lay testimony presented, we must conclude that claimant failed to establish by clear and convincing evidence that he was physically unable to engage in any employment, including working in pain, after October 19, 1998. Consequently, the WCJ erred in awarding claimant TTD benefits for any period past that date. Therefore, the judgment shall be amended to award claimant TTD benefits of $367 per week for the limited period of October 4, 1998 through October 19, 1998.

Supplemental Earnings Benefits
Ewing argues that the WCJ erred in awarding SEB to claimant because he did not prove an inability to earn at least 90% of his pre-injury wage. The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993).
An employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LSA-R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the circumstances of the individual case. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. Workers' compensation is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La. 1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the claim for SEB or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee, or was available in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Banks, supra. Actual job placement is not required. Romero v. Grey Wolf Drilling Company, 594 So.2d 1008 (La.App. 3rd Cir.1992).
*1146 In the present case, claimant testified that he experienced increasing pain while standing or sitting in the same position for prolonged periods. Claimant's testimony was corroborated by that of his wife, Mary Atwood, who described his difficulty in sleeping and in getting up from a seated position following his work injury. Mary Atwood also testified about claimant's complaints of increased pain after his post-injury work mowing lawns and driving a truck.
The medical records show that in May 1999, claimant was examined by Dr. Jim Oglesby at the LSUMC Family Practice Center in Alexandria. Dr. Oglesby noted that claimant exhibited limited range of motion of the lumbar spine and pain with palpation and flexion. In August 1999, claimant again visited Dr. Oglesby, who found a muscle spasm of the lumbar spine and pain with flexion.
The claimant testified that during the period of approximately May-October 1999, he mowed a neighbor's lawn once every two weeks for $20 each time, and mowed his church's lawn every three weeks for $70 each time. On four occasions, the claimant drove a flatbed truck to move a logger's equipment, which he helped to bind down with a chain. Claimant received $100 for each of three trips and $120 for the other. He also received $250 for painting the logger's office building and house trim. The claimant stated that these limited work efforts increased his lower back pain. The testimony demonstrates that although claimant was earning income from work, these jobs were periodic and paid lower wages than he had earned prior to his injury. Based on the evidence in the record, we cannot say the WCJ was clearly wrong in finding that claimant was unable to earn 90% of his pre-accident wages.
Consequently, in order to avoid paying SEB to claimant, Ewing was required to prove that a suitable job was available. An employer can discharge its burden by establishing (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region, (2) the amount of wages that an employee with claimant's experience and training can expect to earn in that job, and (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. Banks, supra.
Here, Ewing did not introduce evidence that it offered or gave notice to claimant of any other suitable job which was available and was within claimant's physical abilities. However, as previously noted, the claimant earned income while working in various jobs during 1999. The testimony demonstrated that the claimant was able to earn an average income of $258 per month.
The amount of SEB is equal to sixty-six and two-thirds percent of the difference between the average monthly wage at the time of injury and the average monthly wages earned in any month thereafter in any employment. The average monthly wage is computed as 4.3 times the average weekly wage. LSA-R.S. 23:1221(3)(a). Sporadic monthly income earned by a claimant should be deducted from his average pre-injury wage in calculating SEB. Courville v. Omni Drilling, 96-174 (La.App.3rd Cir.7/10/96), 676 So.2d 861, writ denied, 96-2073 (La.11/8/96), 683 So.2d 276. A worker's substantial pain is a factor in considering eligibility for SEB, unlike situations involving TTD. Mitchell v. AT & T, 27,290 (La.App.2d Cir.8/28/95), 660 So.2d 204.
Here, the claimant's average weekly wage of $550 computes to a preinjury average monthly wage of $2,365. Two-thirds of the difference between this amount and the earned average monthly wage of $258 is $1,404.66, resulting in a weekly compensation benefit of $326.66. We note that pursuant to LSA-R.S. 23:1221(3)(a), an award of SEB is determined by comparing the difference between *1147 the average monthly wage at the time of injury to that which the employee is able to earn, and such comparison is made on a monthly basis. Thus, the amount of SEB to be paid is subject to change in any month in which the employer is able to show that the employee is earning wages or is able to earn wages. Woolsey v. Cotton Bros. Bakery Co., 535 So.2d 1119 (La.App. 2d Cir. 1988), writ denied, 537 So.2d 1168 (La.1989); Spencer v. Gaylord Container Corp., 96-1230 (La. App. 1st Cir.3/27/97), 693 So.2d 818.
Accordingly, the WCJ judgment shall be amended to award claimant SEB in the amount of $326.66 per week for the period of October 20, 1998 through November 30, 1999, and to order that the defendant pay claimant SEB thereafter in accordance with LSA-R.S. 23:1221(3)(a).

Motion for New Trial
Ewing contends the WCJ erred in denying its motion for new trial. Ewing argues that the judgment should have required that defendant be provided with claimant's specific earnings. However, we note that claimant testified concerning his post-injury income and this testimony has been considered in our calculation of SEB. Ewing did not show that claimant had earned any additional income. Thus, Ewing's argument lacks merit.
Ewing also complains that its motion for new trial should have been granted because the WCJ's written judgment was not consistent with the oral reasons for judgment. Ewing argues that the award of legal interest was not included in the WCJ's oral reasons for judgment and was in error. The Hearing Officer's Rules provide that the WCJ will not consider a motion for new trial. LAC 40:I.2155. Thus, the WCJ did not err in denying Ewing's motion. Even if the motion had been considered, Ewing's argument is not persuasive. Legal interest assessed on workers' compensation benefits accrues from the date each installment is due. Each weekly benefit is to bear legal interest from the date due until paid. Hall v. McDonald Insulation, 537 So.2d 328 (La. App. 1st Cir.1988). Here, the judgment properly assesses legal interest on the weekly compensation benefits from the date due until paid. The assignment of error lacks merit.

Medical and Travel Expenses
Ewing argues that the WCJ erred in awarding claimant medical and travel expenses because there was insufficient testimony explaining such charges and travel. LSA-R.S. 23:1203 requires employers to furnish all necessary medical treatment to an employee injured in a work-related accident. In addition, the employer is liable for the reasonable and necessary expenses incurred by the employee for mileage traveled in obtaining medical services which the employer is required to furnish. LSA-R.S. 23:1203(D).
In the present case, the claimant testified that he received medical treatment in connection with a work-related injury. Medical records introduced into evidence document the dates on which treatment was provided. The employer is liable only for travel necessary to obtain medical treatment for a work-related injury. Thus, the documentary evidence provides Ewing with sufficient information to determine the medical and travel expenses for which it is liable. Consequently, the WCJ did not err in ordering that Ewing pay the claimant's reasonable medical and travel expenses incurred for treatment of his work-related injury. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, that portion of the judgment awarding weekly compensation benefits is amended and the claimant, Cecil Atwood, is hereby awarded temporary total disability benefits of $367 per week for the period of October 4, 1998 through October 19, 1998. The judgment is further amended to award claimant SEB in the amount of $326.66 per week for the period of October 20, 1998, through November 30, 1999, and to order that defendant, Ewing Timber, Inc., continue paying claimant SEB thereafter in accordance *1148 with LSA-R.S. 23:1221(3)(a). The judgment, as amended, is otherwise affirmed. Costs of this appeal are assessed to the appellant, Ewing Timber, Inc.
AMENDED, AND AFFIRMED AS AMENDED.
BROWN, J., concurs and dissents with written reasons.
BROWN, J., Concurring and Dissenting.
Without medical evidence, claimant's testimony was found inadequate to satisfy his burden of proof that he was unable to engage in any employment.
I believe claimant showed only that the job-related incident caused a temporary, minor injury. Thus, I would deny Supplemental Earnings Benefits. In this respect, I dissent.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY, and DREW, JJ.
Rehearing denied.
BROWN and DREW, JJ., would grant rehearing.