796 So.2d 761 (2001)
Michael W. LEWIS, Plaintiff-Appellee,
v.
CASINO MAGIC, Defendant-Appellant.
No. 35,083-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 28, 2001.
*762 Lunn, Irion, Salley, Carlisle & Gardner by Walter S. Salley, Shreveport, Counsel for Appellant.
John S. Stephens, Counsel for Appellee.
Before STEWART, CARAWAY and DREW, JJ.
STEWART, J.
In this workers compensation case, the defendant, Casino Magic (hereinafter Casino) appeals a judgment awarding the claimant, Michael Lewis (hereinafter Lewis), supplemental earnings benefits (hereinafter SEB) for the periods of March 12, 1998, through May 22, 1998, and from November 22, 1998, and continuing thereafter in accordance with La. R.S. 23:1221(3), subject to a total credit of $150 assessed as wages by the claimant. For the following reasons, we affirm.

FACTS
Michael Lewis was employed with Casino Magic on February 28, 1998, as a busser of tables when he slipped and fell on a rubber mat and suffered an injury to his back. Lewis was initially treated by Dr. Ignatius Tedesco who diagnosed him with a paracervical lumbar tenderness with a mild contusion. Lewis was also examined by Dr. James Harris on March 10, 1998, and diagnosed with contusions of the cervical and lumbar spine and released to light duty work.
The light duty work release form that Lewis was required to sign by Casino indicated that Lewis sole responsibility was to roll silverware into napkins. Lewis was advised by Charles Young, the workers' compensation coordinator with Casino, that if he deviated in any way from rolling silverware, he would be written up. In fact, Mr. Young told Lewis that if anyone attempted to force him to do anything *763 other than roll silverware into napkins, they would also be written up. However, approximately two hours after Lewis began working, there were no more silverware and napkins to roll. Mr. Antwine, Lewis' immediate supervisor, told Lewis that he could also dip glasses into lemon juice as a light duty assignment. Interestingly, polishing the glasses and dipping them in lemon juice was a part of the regular duties of a busser. Although Lewis admitted that he was physically capable of performing the tasks, he warned Mr. Antwine of Mr. Young's strict warning regarding his work restriction to just rolling silverware into napkins. After a heated exchange with Antwine, Lewis was allowed to leave early from work.
Lewis then advised his new treating physician, Dr. Michael Acurio, an expert in the field of orthopedics, that light duty work was not available at Casino, and that Casino was attempting to force him to perform his regular duties. Dr. Acurio had previously diagnosed a degenerative condition in Lewis' back. He opined that Lewis' back pain, neck pain, and stiffness complaints were likely related to arthritis and the cervical and lumbar strain. Dr. Acurio determined that because of the degenerative condition, Lewis had probably reached maximum medical improvement in April, 1998. On March 11, 1998, Dr. Acurio gave Lewis a medical release from work for 11 days.
On March 12, 1998, Lewis brought the medical excuse to Barbara Manina, a risk manager at Casino, who then offered him work filing papers or filing pictures in her office. Lewis rejected the offer because of the restrictions given him by Mr. Young. Ms. Manina then faxed Dr. Acurio a statement advising him of available light duty work for Lewis. Lewis testified that Manina had requested that he contact her the next day, but he went to Winnfield to recuperate from his injury and did not contact her or Casino. Young and Manina forwarded correspondence to Lewis dated March 18, 1998, regarding a missed appointment which was scheduled for March 17, 1998 at Willis Knighton Work Kare, where Casino sends its employees who are injured at work. The correspondence advised Lewis that the medical appointment was rescheduled to March 20, 1998, and that Casino had constructed a job in his department that met the criteria of Lewis' physicians. Lewis was advised in the correspondence to contact Casino within five days. However, Young testified that he was unable to contact Lewis. In fact, Lewis was unaware that he had been released to light duty work until he came in for an examination on March 23, 1998. Lewis then returned to Casino on March 24, 1998, with a medical excuse. However, he was not offered light duty work, but was fired by Casino for not contacting them while he was away from work.

DISCUSSION
Casino contends the WCJ erred in finding that the claimant's injuries and disability were caused by a work-related accident and by awarding supplemental earnings benefits. Casino argues that the WCJ's findings were manifestly erroneous and, therefore, this court should review the record and determine the facts de novo.
In a workers' compensation case, an injured worker must prove by a preponderance of the evidence that his disability was caused by a work related accident. Burroughs v. LCR-M, 34,082 (La. App. 2nd Cir.3/2/01), 781 So.2d 877. The injured employee's testimony alone may be enough to meet the burden of proof as long as no other evidence contradicts the employee's version of the accident, and the testimony is corroborated by circumstances *764 following the alleged incident. Burroughs, supra.
An injured worker's disability is presumed to have resulted from an accident, if before the accident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, proving either that there is sufficient medical evidence to show a causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection. Clay v. Delphi Interior & Lighting Systems, 34,242 (La.App. 2nd Cir.12/22/00), 775 So.2d 1207. Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Burroughs, supra.
It is undisputable that Lewis was involved in an accident at work on February 28, 1998. Lewis testified that he had experienced no problems with his back prior to the accident. Each doctor who treated Lewis determined that he had suffered an injury to his back as a result of the accident. In fact, Dr. Acurio testified that the injuries from the accident exacerbated a degenerative condition in Lewis' back. That conclusion supports the causal connection between the accident at work and Lewis's injuries. Thus, we cannot conclude that the hearing officer was manifestly erroneous in finding that Lewis suffered injuries from a work related accident.

Supplemental Earnings Benefits
Casino argues that the WCJ erred in awarding SEB to Lewis because he did not prove an inability to earn at least ninety percent (90%) of his pre-injury wage. The purpose of SEB is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52 (La.1993).
An employee is entitled to receive SEB if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the circumstances of the individual case. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551. Workers' compensation is to be liberally construed in favor of coverage. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La. 1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the claim for SEB or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee, or was available in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Banks, supra. Actual job placement is not required. Atwood v. Ewing Timber, Inc., 34,045 (La.App. 2nd Cir.12/15/00), 774 So.2d 1140.
The claimant testified that during the period of approximately October 1998-April 2000, he performed odd jobs including pressing t-shirts, washing cars, running small errands, and cooking burgers for a small party earning a total of $150. Lewis testified that although he attempted to find other jobs, he could not find employment *765 within the light duty restrictions. The testimony demonstrates that although claimant was earning income from work, these jobs were periodic and paid lower wages than he had earned prior to his injury. Based on the evidence in the record, we cannot say the WCJ was clearly wrong in finding that claimant was unable to earn ninety percent (90%) of his pre-accident wages.
Consequently, in order to avoid paying SEB to claimant, Casino was required to prove that a suitable job was available. An employer can discharge its burden by establishing (1) the existence of a suitable job within claimant's physical capabilities and within claimant's or the employer's community or reasonable geographic region, (2) the amount of wages that an employee with claimant's experience and training can expect to earn in that job, and (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. Banks, supra.
Here, Casino did not introduce evidence that it offered or gave notice to Lewis of any other suitable job which was available and was within claimant's physical abilities. In fact, after Lewis was released to light duty work, Casino did not offer him a light duty position with them. They fired him. While there were miscommunications and problems with Lewis' return back to work caused by both parties, this fact intensive dispute should be resolved against Casino for its failure to properly allow Lewis an opportunity to return to work and to perform the light duty activities to which he had been assigned. Consequently, the hearing officer's findings on this issue are not manifestly erroneous.

CONCLUSION
For the foregoing reasons we find that the hearing officer was not manifestly erroneous in finding that Lewis' injuries were causally connected to a work related accident; that Lewis established that he was unable to earn ninety percent (90%) of his previous income, and that he was entitled to supplemental earnings benefits. Costs of this appeal are assessed to appellant, Casino Magic.
AFFIRMED.