870 So.2d 515 (2004)
Tonya LEWIS, Plaintiff-Appellee,
v.
CHATEAU D'ARBONNE NURSE CARE CENTER, Defendant-Appellant.
No. 38,394-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
*517 Hudson, Potts & Bernstein, L.L.P. by Brian P. Bowes, Monroe, for Appellant.
Law Offices of Street & Street by C. Daniel Street, for Appellee.
Before BROWN, GASKINS and DREW, JJ.
DREW, J.
Chateau D'Arbonne Nurse Care Center appeals from an Office of Workers' Compensation (OWC) judgment awarding compensation benefits, penalties, and attorney fees to claimant, Tonya Lewis. The employer contends that (1) claimant was not a credible witness and failed to prove her claim, and (2) the Worker's Compensation Judge (WCJ) erred in awarding penalties and attorney fees. We affirm.

FACTS
Chateau is an inpatient health care facility in Farmerville. Lewis, a certified nursing assistant, worked for Chateau over several different periods during the past decade. Prior to this alleged accident, her most recent period of employment had commenced in November 2002. Her responsibilities included feeding and moving patients.
On December 29, 2002, claimant and another employee, Alice Kelly, were lifting a 200-pound male patient from a bed into a wheelchair. As they lifted the patient, Lewis felt something "pop" in her back. She described the sensation as feeling "like someone had stabbed her." Kelly confirmed that during the process of lifting the patient, Lewis started screaming and complaining of back pain as she bent over the bed in apparent pain. The two women called for the nursing supervisor, who spoke with both ladies and sent Lewis to the emergency room at Union General Hospital in Farmerville. The nursing supervisor also prepared an incident report for Chateau's records.
Claimant had a back x-ray at the hospital and was told that she had perhaps pulled a muscle; the only abnormality noted on Lewis' x-ray report was "minimal narrowing L5-S1 disc space." The doctor prescribed Toradol (an analgesic), Flexeril *518 (a muscle relaxant), and Bextra (an anti-inflammatory), and instructed Lewis not to work for three to four days and to return only to light-duty work. Claimant purchased the Toradol and Flexeril but could not afford to buy the Bextra. She went home to rest for the prescribed period. In addition to the Toradol and Flexeril, Lewis said that she also took Lortab (hydrocodone) and Darvocet (propoxyphene) to relieve the pain, explaining that she had previously been prescribed these medications for pain stemming from ulcerative colitis, a condition from which she has suffered since age 13. The next day, she returned to the hospital for a drug screen test.
Lewis said that she attempted to return to work, but experienced great pain on her first day back while sitting in a chair, and had to go home. Learning that Chateau would pay for her medication, she then filled the Bextra prescription.
On February 6, 2003, after another brief respite at home, she again attempted to return to work, but had to leave due to pain suffered as she tried to remove a patient's shoes. She testified that the day after this incident, she attempted to go to her class at college but was unable to sit for very long and had to go to the emergency room for further treatment.
The emergency room doctor gave claimant a shot of Demerol and set her up with a February 10 appointment to see her general practice doctor, Dr. Steven Unkel. Lewis gave Dr. Unkel a history of injuring her back when lifting a patient. Dr. Unkel believed that she had sprained her back, restricting her from working. Dr. Unkel prescribed steroids, muscle relaxants, and pain killers; and recommended physical therapy. At his deposition, Dr. Unkel recalled prescribing hydrocodone, hydromorphone (Dilaudid), and Darvocet for Lewis' pain from ulcerative colitis in the past. In another deposition, Dr. John Smiarowski said that he might have prescribed Darvocet to her. Lewis attempted to undergo physical therapy but said that her pain became worse upon performing the therapy, and she elected not to continue.
Claimant saw Dr. Unkel again on February 20, complaining of worse back pain and shooting pain in her left leg. The doctor again prescribed steroids, anti-inflammatory medicine, and pain killers, and added a prescription for Elavil, an anti-depressant that the doctor said sometimes helps with nerve-related pain. Lewis next saw Dr. Unkel on March 5, 2003, and reported that her pain, while still present, was improved. Dr. Unkel recommended exercise.
On March 7, 2003, Chateau's director of nursing, Tammy Matthews Dankleson, called Lewis. Dankleson had received that day a copy of the drug screen performed on claimant the day after the accident. The drug screen was positive for drugs (hydrocodone and hydromorphone) not listed by Lewis on the forms she completed upon her most recent employment with Chateau. Dankleson was concerned that Lewis had been working under the influence of those drugs, and that day Dankleson fired claimant. Lewis later provided prescriptions for these drugs to Dankleson, but Chateau refused to rehire Lewis.
On March 11, 2003, claimant saw Dr. Unkel again, and the doctor released her to return to light-duty work. However, Lewis' pain, including numbness in her left leg, persisted. On March 14, 2003, Lewis filed a disputed claim for compensation against Chateau; Chateau did not pay Lewis indemnity benefits or provide her with additional medical treatment.
Claimant saw an orthopedic surgeon, Dr. Douglas Brown, on March 17, 2003. *519 Lewis denied having any prior back troubles. Dr. Brown reviewed a new x-ray of Lewis' back and found that her L5-S1 disc was ruptured/herniated. A later MRI confirmed this diagnosis and also confirmed Dr. Brown's observation of some degenerative changes at the L3-4 disc. The doctor explained in his deposition that the symptoms claimant describeda "pop" feeling in the back and pain radiating into the legsare the classic presentations of an acute disc injury. He also said that the events in December 2002 and in February 2003 "certainly ... made the disc worse." Dr. Brown recommended surgery, a laminectomy, to remove the disc. The doctor restricted Lewis from working and said that Lewis would be unable to work with the disc in its ruptured condition.
In mid-May of 2003, at the request of Chateau, Lewis saw another orthopedic surgeon, Dr. Carl Goodman, for an evaluation. Claimant again denied having any prior back troubles. Dr. Goodman confirmed the disc herniation observed by Dr. Brown and also recommended surgery. Dr. Goodman believed the injury to be an acute injury rather than the result of a degenerative problem because the images of Lewis' back showed disc material outside the disc space. The doctor said that the pain and numbness that Lewis said she suffered in her left leg immediately after the December 2002 incident were consistent with this type of acute disc injury.
Claimant denied having any problems with her back prior to the December 2002 incident. At her deposition, Lewis said she did not recall having any previous complaints of, or treatment for, back pain. Dr. Goodman reviewed Lewis' medical records and noted that she had made complaints of back pain and leg numbness prior to the 2002 incident, but said that the symptoms with which she presented to him related back to the 2002/2003 events at work.
Indeed, Lewis' history does include complaints of back pain prior to the accident at Chateau. The record shows that Lewis went to the emergency room at Union General Hospital in October 1992, December 2000, and June 2002, with complaints of back pain. Also, on December 31, 2001, she visited the emergency room with a complaint of right hip pain radiating down to her right foot. Dr. Unkel explained that the 1992 problem was a pelvic infection, not a low back injury. The doctor also said that he had treated Lewis in August 2000 for complaints of abdominal and back pain secondary to her ulcerative colitis.
The Union General records reflect that Lewis had many other visits to the emergency room with complaints of abdominal pain generally that were suspected to be secondary to her ulcerative colitis. She explained that, "When I go to the emergency room, it's for my colitis."
Claimant had also been in a car accident in 1999; she testified that the only injury she suffered in that accident was some scarring on her face. She admitted that she had complaints of back and leg pain at that time but said that the doctor diagnosed her with tendinitis in her hip, not a back problem, and at trial she indicated that the pain from the accident was in a different area. Records of the treating physician, Dr. Richard Ballard, confirm the tendinitis diagnosis.
Lewis called in sick on September 8, 2002, to miss work at Chateau due to a backache. Rebecca Norton, the Chateau employee who took the call, had no independent memory of the cause of this complaint. Claimant explained that on that date, she was having back pain secondary to her menstrual cycle.
*520 After hearing the testimony of the witnesses and considering the medical records, the WCJ found in favor of Lewis, observing that:
 The symptoms claimant described at the time of the December 2002 incident were consistent with those described by the doctors as symptoms of an acute disc injury.
 Kelly witnessed the incident and the nursing supervisor arrived at the scene shortly after it occurred.
 Lewis had carried her burden of proof that she suffered the acute back injury on December 29, 2002, in the course of her employment.
The WCJ ruled that claimant was entitled to temporary total disability benefits from February 7, 2003, and to medical benefits, including the recommended surgery.
The WCJ also found that Chateau had been arbitrary and capricious in denying indemnity and medical benefits to Lewis. The WCJ observed that:
 If Chateau had investigated the incident, the employer would either have come to the conclusion that Lewis had been injured when she claimed to have been, or would have decided they were not going to pay for arbitrary and capricious reasons.
 Dr. Brown's examination made it clear that Lewis' injury was a new injury, not a pre-existing problem, and that Chateau offered no alternative cause for the injury.
 Lewis appeared at a previous hearing "walk[ing] in a bent-over condition" and that she continued to walk in this position.
The WCJ awarded the maximum penalty for both the failure to pay benefits and the failure to authorize surgery and noted that "the only reason I'm assessing a two thousand dollar penalty for their failure to authorize the surgery is because the law won't let me go any higher on that one." The trial court assessed Chateau with $6,000.00 in attorney fees for each of the two failures to pay benefits.

LAW AND DISCUSSION
Proof of Injury
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of her employment. La. R.S. 23:1031. The injured employee bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Quinones v. U.S. Fidelity and Guar. Co., 93-1648 (La. 1/14/94), 630 So.2d 1303; Thompson v. Dillard's Department Store, 32,974 (La. App.2d Cir.5/10/00), 759 So.2d 1074. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Thompson, supra.
The causal connection can be established when the employee proves that before the accident she was in good health, but commencing with the accident, symptoms of the disabling condition appeared, and there is sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the disabling condition. Quinones v. U.S. Fidelity and Guar. Co., supra; Thompson, supra. An employee's pre-existing condition does not disqualify her claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Thompson, supra. When a *521 claimant proves that she had no disabling symptoms before the accident, but that commencing with the accident, the disabling symptoms appeared, and there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the disabling condition, a claimant's work injury is presumed to have aggravated a pre-existing infirmity to produce his disability. Thompson, supra.
On appeal, Chateau urges that the circumstances of this incident showed that claimant's account was not credible. Chateau, in particular, points to the lack of obvious trauma at the time of the accident and the medical evidence of Lewis' back problems prior to the incident. We observe that the type of injury Lewis sustained is not the sort that is usually accompanied by an obvious trauma. The symptoms claimant reported as commencing at the time of the incident were those described by Dr. Brown as the classic presentation of a disc injury. Further, according to the medical evidence and deposition testimony, Lewis' prior back troubles were consistent with her ulcerative colitis, infection, or pain from a car accident and were not consistent with a recent acute disc injury.
The judge's finding that Lewis proved that she suffered an injury is essentially a finding of fact, based, at least in part, upon claimant's credibility. Whether the claimant has carried her burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer. Harris v. Coushatta Industrial Sand, Inc., 31,977 (La.App.6/16/99) 741 So.2d 143. Factual findings in workers' compensation cases are subject to the manifest error rule. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, 617 So.2d 880 (La.1993); Graham v. Georgia-Pacific Corp., 26,165 (La.App.2d Cir.09/23/94), 643 So.2d 352. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart, supra. The trial court is in a superior position to evaluate the credibility of witnesses than is the appellate court. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra. In this case, we find no manifest error in the trial court's conclusion that Lewis proved that she suffered a back injury at work.
Temporary Total Disability Benefits
An injured employee seeking temporary total disability benefits must prove by clear and convincing evidence that she is physically unable to engage in any employment, regardless of its nature, including employment while working in pain. La. R.S. 23:1221(1); Atwood v. Swing Timber, Inc., 34,045 (La.App.2d Cir. 12/15/00), 774 So.2d 1140, writ denied, XXXX-XXXX (La.5/11/01), 792 So.2d 733. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; i.e., much more probable than its nonexistence. Knotts v. Snelling Temporaries, 27,773 (La.App.2d Cir.12/6/95), 665 So.2d 657. A claimant may prove disability through medical and lay testimony. The WCJ must weigh all of the evidence to determine if the claimant has met her burden of proving temporary total disability. Atwood v. Ewing Timber, supra.
Claimant testified that she attempted to return to work after the incident on at *522 least two occasions but suffered pain too great to allow her to continue to work. By March 11, 2003, Dr. Unkel released Lewis to return to light-duty work, but her pain persisted, and less than a week later, March 17, 2003, Dr. Brown restricted Lewis from working. Additionally, Dr. Brown said that Lewis' back injury prevented her from working. Given the objective evidence of the disc injury commencing in December 2002, the circumstances clearly show that claimant was temporarily totally disabled as a result of this injury.
Medical Expenses
A workers' compensation claimant may recover medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury. Tatum v. St. Patrick's Psychiatric Hosp., 32,616 (La. App.2d Cir.12/30/99), 748 So.2d 1276, writ denied, XXXX-XXXX (La.3/24/00), 758 So.2d 157. The employee must prove by a reasonable preponderance of the evidence the necessity and relationship of the physician's treatment to the work-related accident. La. R.S. 23:1203; Balsamo v. Jones, 28,885 (La.App.2d Cir. 12/11/96), 685 So.2d 1140. Both Dr. Brown and Dr. Goodman opined that Lewis needed surgery to correct her back injury, and it was not error for the trial court to find this treatment to be necessary.
Penalties and Attorney fees
The remaining questions concern the penalties and attorney fees awarded by the WCJ for Chateau's failure to pay indemnity and medical benefits. The employer's failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. La. R.S. 23:1201(F); Baker v. Libbey Glass, Inc., 32,748 (La.App.2d Cir.5/10/00), 759 So.2d 1007; writ denied, XXXX-XXXX (La.9/15/00), 768 So.2d 1280. To reasonably controvert a claim, the employer must have sufficient factual or medical information to reasonably counter the evidence provided by claimant. Balsamo v. Jones, supra. La. R.S. 23:1201.2 provided for an assessment of attorney fees when the employer arbitrarily and capriciously discontinued benefits without probable cause. Thomason v. Wal-Mart Stores, Inc., 37,520 (La.App.2d Cir.9/04/03), 852 So.2d 1283, writ denied, 2003-2774 (La.12/19/03), 861 So.2d 573. Although this employer initially paid some of Lewis' medical expenses, the claimant never received any weekly benefits.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir.11/1/95), 662 So.2d 803. The WCJ's decision concerning whether or not to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Balsamo v. Jones, supra.
The amount of attorney fees awarded rests within the discretion of the WCJ, and that determination will not be disturbed absent an abuse of that discretion. McCarroll v. Airport Shuttle, Inc., 00-1123 (La.11/28/00), 773 So.2d 694; Ward v. Phoenix Operating Co., 31,656 (La.App.2d Cir.2/24/99), 729 So.2d 109. The factors to be considered in determining the amount of the attorney fees include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case. McCarroll, supra; Ward, supra.
Although we strictly construe these statutes, we cannot conclude that the trial *523 court erred in awarding these penalties and attorney fees for Chateau's failure to pay benefits. Claimant's medical records did show evidence of back pain predating this incident. She had called in sick once to Chateau with a backache. However, these records show that she frequently visited the local emergency room with complaints of abdominal pain caused by her ulcerative colitis, a condition that she had previously disclosed to Chateau. The medical evidence from the time of her car accident showed a hip injury, not a back injury. Further, she suffered the type of injury described by Drs. Brown and Goodman as an acute injury rather than a recurring or chronic problem. The back injury was objectively confirmed with x-ray and MRI as an acute injury. Given these facts, the evidence of prior back pain was insufficient to reasonably controvert Lewis' claim for her ruptured disc. Under either statutory standard, reasonably controverted in La. R.S. 23:1201(F), or arbitrary, capricious, and without probable cause in La. R.S. 23:1201.2,[1] the penalties and attorney fees were properly awarded.

CONCLUSION
For the above reasons, the judgment of the OWC is affirmed in all respects. Costs of this appeal are assessed to Chateau D'Arbonne Nurse Care Center.
AFFIRMED.
NOTES
[1] This action was filed March 14, 2003, and the judgment was rendered August 12, 2003, and signed August 21, 2003. Effective August 15, 2003, Act 1204 of the Regular 2003 Louisiana Legislature repealed La. R.S. 23:1201.2 and amended portions of La. R.S. 23:1202(F) concerning penalties and attorney fees. This matter is governed by the acts in effect at the time of the injury. Travelers Insurance Co. v. Reliable Homes Health Care, Inc., 99-0314 (La.App. 4th Cir.6/7/00), 765 So.2d 445, writ denied, 2000-2025 (La.10/6/00), 771 So.2d 87.