877 So.2d 1055 (2004)
Victoria TRON, Plaintiff-Appellee
v.
LITTLE ITALIANO, INC., Defendant-Appellant
Victoria Tron, Plaintiff-Appellee
v.
Century Tel Center, Defendant-Appellee
Victoria Tron, Plaintiff-Appellee
v.
Little Italiano, Inc., Defendant-Appellant.
Nos. 38,556-WCA, 38,557-WCA, 38,558-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2004.
*1056 Lewis O. Lauve, Jr., Alexandria, for Appellants.
Robert L. Beck, Jr., Alexandria, for Appellee, Victoria Tron.
Lorraine A. Dupont, Baton Rouge, for Appellees, Century Tel Center and Zurich American Insurance Company.
Before CARAWAY, DREW and HARRISON (Pro Tempore), JJ.
HARRISON, J. (Pro Tempore).
The defendants, Little Italiano, Inc. ("Little Italiano") and Louisiana Restaurant Association-Self Insurers Fund ("LRA"), appeal a judgment awarding the *1057 claimant, Victoria Tron, temporary total disability (TTD) benefits of $268.67 from February 2002 and continuing. The workers' compensation judge (WCJ) found that the employers, Little Italiano and Century Tel Center ("CTC"), were liable in solido for claimant's TTD benefits and necessary medical treatment. The WCJ assessed the employers with penalties and attorney fees, finding that they had failed to reasonably controvert the claimant's indemnity and medical benefits claims. For the following reasons, we affirm.

FACTS
On March 9, 1999, the claimant was injured while working as a waitress at Little Italiano, which was insured through LRA (also referred to collectively as "LRA"). An MRI of claimant's cervical spine indicated mild disc bulging at the C4-5 and C5-6 levels. Claimant's family doctor referred her to Dr. Anil Nanda, a neurosurgeon, for an evaluation. Conservative treatment failed and Dr. Nanda recommended surgery at the C5-6 level. LRA sent claimant to another neurosurgeon, Dr. Warren Long, for a second opinion. Dr. Long opined that surgery would be necessary at two levels.
In June 1999, Dr. Long performed fusion surgery at the C4-5 and C5-6 levels. Following surgery, claimant participated in physical therapy and continued to complain of neck pain. In December 1999, Dr. Long determined that claimant had reached maximum medical improvement and released her to return to work with the restriction that she not lift any object weighing more than 25 pounds. The claimant became concerned by what she alleged was inappropriate behavior by Dr. Long and returned to Dr. Nanda for treatment.
In January 2000, claimant was seen by Dr. Nanda, who recommended a myelogram of the cervical spine and an EMG/nerve conduction study. However, LRA denied approval for the diagnostic testing suggested by Dr. Nanda because he was not the authorized neurosurgeon at the time. In March 2000, LRA terminated claimant's weekly indemnity benefits on the basis of Dr. Long's prior opinion that she could return to work with a lifting restriction. On April 12, 2000, the claimant filed a disputed claim for compensation with the Office of Workers' Compensation (OWC) seeking payment for the recommended diagnostic tests, additional medical treatment, weekly benefits, penalties and attorney fees.
In September 2000, claimant sought treatment at LSU Medical Center and obtained a cervical myelogram. The results showed the fusion at C4-6 with mild degenerative changes and a swollen nerve root at the C6-7 disc level. Subsequently, the OWC issued an order allowing the claimant to seek treatment with Dr. Nanda. On October 13, 2000, claimant saw Dr. Nanda who reviewed the myelogram results and opined that further surgery was not necessary, but again recommended an EMG nerve conduction study. This was claimant's last office visit with Dr. Nanda. In October 2000, claimant was hired by CTC as a concession and catering worker.
In January 2001, claimant sought treatment with Dr. Mark Wilson as her family physician and gave a history of prior neck surgery. On April 17, 2001, claimant telephoned Dr. Nanda's office with a complaint of neck pain and headaches. Dr. Nanda recommended pain management and a neurology consult with Dr. Roger Kelley. In response, LRA sought a second opinion by Dr. Donald Smith regarding the need for such treatment. On November 5, 2001, Dr. Smith examined claimant, who stated that she was working and complained of neck pain after returning home at night. Dr. Smith agreed *1058 with the recommendation for a neurological evaluation, pain management and a nerve conduction study. As a result, LRA approved an evaluation by Dr. Kelley and authorized pain management treatment.
On December 6, 2001, while claimant was pushing a large frozen-drink machine, she felt severe pain in her neck with pain radiating into her right arm. On December 9, 2001, claimant sought treatment at the Willis Knighton-Bossier emergency room. The nurse noted claimant's complaint of neck pain related to "pushing a heavy cart at work." On December 16, 2001, claimant reported the incident to CTC and completed an accident report. She continued working, but visited the hospital another time complaining of neck pain. On December 28, 2001, claimant was examined by Dr. Kelley, who agreed with the need for an EMG nerve conduction test and pain management. Claimant reported to Dr. Kelley the incident at work earlier in the month that increased her neck pain.
On January 31, 2002, claimant underwent an EMG nerve conduction study. The results showed denervation of the right arm and indicated a C7 radiculopathy with more acute findings on the right side. In February 2002, claimant resigned from CTC. The next month, she saw Dr. Kathleen Majors for pain management. Dr. Majors diagnosed claimant with neck and bilateral upper extremity pain following cervical fusion and recommended physical therapy, epidural steroid injections and counseling.
After receiving Dr. Kelley's medical report noting claimant's second work injury, LRA terminated all medical benefits to claimant on the basis that the accident at CTC was solely responsible for her disability. CTC also denied benefits, contending that claimant's disability and medical treatment were related to her prior injury. LRA and CTC designated Dr. Sandra Weitz, an anesthesiologist and pain management specialist, to evaluate claimant for a second opinion. Dr. Weitz opined that both work accidents combined were responsible for claimant's disability and need for medical treatment. Despite Dr. Weitz's opinion, both LRA and CTC continued to deny compensation benefits. In April 2002, claimant filed disputed claims against Little Italiano and CTC seeking wage benefits, medical treatment, penalties and attorney fees.
At the OWC hearing, the parties stipulated that claimant's average weekly wage was $424.35 at Little Italiano and $402.80 at CTC. The WCJ found that claimant's continuing problems from her first work injury were aggravated by the work accident at CTC. The WCJ determined that each employer was liable in solido for weekly indemnity benefits and necessary medical treatment. The WCJ found that LRA and CTC failed to reasonably controvert claimant's claim for TTD and assessed each employer with $2,000 in penalties and $5,000 in attorney fees. The WCJ assessed separate penalties and attorney fees for the employers' failure to pay medical benefits. Little Italiano and LRA appeal the judgment.

DISCUSSION
LRA filed an exception of prescription in this court alleging that the claimant's April 2002 claim for workers' compensation benefits has prescribed because it was submitted more than two years after LRA's last acknowledged indemnity payment in February 2000. Alternatively, LRA argues that the claim has prescribed because it was filed more than one year after claimant began working at CTC in October 2000, when indemnity benefits were not owed.
In case of personal injury at work, all claims for payments shall be barred unless *1059 within one year after the accident a formal claim has been filed with the office of workers' compensation. Where such payments have been made, the limitation shall not take effect until the expiration of one year from the time of making the last payment, or three years from the last payment of supplemental earnings benefits. LSA-R.S. 23:1209(A).
In the present case, the record shows that in October 2001, LRA paid claimant the amount of $4,434.84, which reflected the payment of indemnity benefits in settlement of a dispute between the parties. In its brief, LRA asserts that prescription begins to run on the date of the last "acknowledged" payment of indemnity benefits or from the last month in which such benefits were allegedly owed. However, Section 1209(A) provides that where payments have been made in a case, the time limitation takes effect one year after "the time of making the last payment." Thus, contrary to LRA's assertion, the prescriptive period does not depend upon when the employer acknowledged payment of indemnity benefits or upon the date when such payments were allegedly owed. Since LRA's last payment of benefits was in October 2001, the April 2002 claim was timely filed. Consequently, LRA's argument lacks merit and the exception of prescription shall be denied.

Solidary Liability of Successive Employers
In two assignments of error, LRA contends the WCJ erred in finding that LRA is solidarily liable for indemnity and medical benefits. LRA argues that CTC is solely liable for compensation benefits and medical expenses because claimant had recovered from her initial work injury when the December 2001 accident occurred.
When a combination of work-related accidents causes a disability, or where by virtue of a second accident a prior injury is aggravated causing disability, both the subsequent employer and the employer at the time of the first work-related accident are solidarily liable for compensation benefits and medical expenses. Hill v. Manpower-Collier Investments, 30,444 (La.App.2d Cir.4/8/98), 712 So.2d 560. Factual findings in workers' compensation cases are subject to the manifest error standard of review. Atwood v. Ewing Timber, Inc., 34,045 (La.App.2d Cir.12/15/00), 774 So.2d 1140. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable in light of the record as a whole. Atwood v. Ewing, supra; Stobart v. State, 617 So.2d 880 (La.1993).
In the present case, the claimant testified that after her June 1999 neck surgery, she did well for a period of months before her pain returned. She described feeling persistent pain in the neck area radiating to her left shoulder and left arm. Claimant stated that she continued to experience neck and left shoulder pain while working at CTC. Claimant testified that in December 2001, she felt a shooting pain in her neck on the right side while moving a large drink machine into an elevator at work.
Claimant introduced into evidence the medical reports of her visits to several physicians and the results of diagnostic tests. In November 2002, claimant was examined by Dr. Weitz. In her report, Dr. Weitz noted that claimant's September 2000 myelogram showed swelling of the C7 nerve roots bilaterally after her surgery. Dr. Weitz determined that the second work-related injury more probably than not caused the C7 radiculopathy shown on the January 2002 EMG nerve conduction study. Dr. Weitz opined that claimant never fully recovered from her first injury, *1060 which was primarily responsible for her disability, and that the accident at CTC caused a definite injury in the form of the right C7 radiculopathy and exacerbated her underlying condition. In her deposition, Dr. Weitz testified that after reviewing the medical records and a detailed description of claimant's job at CTC, she had concluded that claimant had been working beyond her capabilities before her injury at CTC and that both accidents substantially contributed to claimant's disability.
Dr. Majors opined in her deposition that claimant was unable to return to work or perform any type of gainful employment as of March 2002. Dr. Majors testified that claimant needed cervical epidural steroid injections, pain counseling and medication before working again. In his deposition, Dr. Kelley opined that as of February 2002, claimant was in need of chronic pain management due to the combination of her chronic neck pain and the new incident in December 2001.
Based upon the medical evidence and testimony presented, we cannot say that the WCJ was clearly wrong in finding that claimant had not fully recovered from her initial injury and that a combination of work-related accidents contributed to her disability. Thus, the WCJ correctly concluded that Little Italiano and CTC are solidarily liable for payment of TTD benefits and medical expenses. The assignments of error lack merit.

Penalties and Attorney Fees
The defendant contends the WCJ erred in awarding claimant penalties and attorney fees. Defendant argues that such an award was not warranted because it had reasonably controverted the claim for compensation benefits.
The employer's failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. LSA-R.S. 23:1201(F); Baker v. Libbey Glass, Inc., 32,748 (La.App.2d Cir.5/10/00), 759 So.2d 1007. To reasonably controvert a claim, the employer must have sufficient factual or medical information to reasonably counter the evidence provided by claimant. Balsamo v. Jones, 28,885 (La.App.2d Cir.12/11/96), 685 So.2d 1140.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. Davis v. Jones Baldwin Music Co., 27,545 (La.App.2d Cir.11/1/95), 662 So.2d 803. The WCJ's decision concerning whether or not to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Balsamo v. Jones, supra.
In its brief, LRA contends that under LSA-R.S. 23:1201.2,[1] penalties are not available for its decision to discontinue payments for claimant's visits with Dr. Majors. However, the record demonstrates that the WCJ assessed penalties and attorney fees on the basis of LRA's failure to provide payment for medical treatment recommended by Dr. Majors, including cervical epidural steroid injections, pain counseling and medication. Thus, since the conduct at issue did not involve discontinuance of medical benefits, Section 1201.2 is not applicable. LRA's argument lacks merit.
LRA asserts that it possessed sufficient factual and medical information to reasonably *1061 controvert claimant's evidence. LRA relied on the 1999 work release of Dr. Long, the lack of pain complaints by claimant in the records of Dr. Wilson, claimant's failure to seek treatment with Dr. Nanda in 2001 and claimant's ability to work in the year prior to the CTC incident. However, the record shows that LRA received the January 2002 EMG nerve conduction test results indicating objective findings of claimant's chronic injury and the more acute right side radiculopathy. In addition, LRA was aware of the opinion of Dr. Majors that claimant was disabled and of the conclusion of Dr. Weitz that both of claimant's injuries had contributed to her disability.
Contrary to LRA's assertion, the work release of Dr. Long and the medical records of Dr. Wilson do not contradict the subsequent objective indications of claimant's injury or the opinions of Dr. Majors and Dr. Weitz. Claimant's failure to visit Dr. Nanda in 2001 is understandable, since he had informed claimant in October 2000 that because surgery was not necessary, there was really nothing else he could do for her. Additionally, even though claimant worked for CTC, she told Dr. Smith in November 2001 that she continued to experience persistent pain during that time.
In light of the medical test results and reports of Dr. Majors and Dr. Weitz available to LRA, we cannot say the WCJ was clearly wrong in finding that LRA failed to reasonably controvert claimant's compensation and medical expense claim. Consequently, the WCJ did not abuse her discretion in assessing penalties and attorney fees for LRA's refusal to pay indemnity and medical benefits. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the exception of prescription is denied and the judgment is affirmed. Costs of this appeal are assessed to the appellants, Little Italiano, Inc. and Louisiana Restaurant Association-Self Insurers Fund.
AFFIRMED.
NOTES
[1] We note that LSA-R.S. 23:1201.2 was repealed by Acts 2003, No. 1204 and re-designated as LSA-R.S. 23:1201(I), effective August 15, 2003. This change does not affect the result of our opinion.