999 So.2d 133 (2008)
Dexter HATFIELD, Plaintiff-Appellee,
v.
AMETHYST CONSTRUCTION, INC., Defendant-Appellant.
No. 43,588-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*136 Kim L. Purdy-Thomas, for Appellants, Amethyst Construction, Inc. and CNA Insurance Company.
Curtis D. Street, for Appellee.
Before WILLIAMS, STEWART, GASKINS, CARAWAY and LOLLEY, JJ.
*137 WILLIAMS, J.
The defendants, Amethyst Construction, Inc. (Amethyst) and CNA Insurance Companies (CNA), appeal a judgment in favor of the claimant, Dexter Hatfield. The workers' compensation judge (WCJ) found that Hatfield was entitled to workers' compensation benefits, medical expenses, and penalties and attorney fees in connection with injuries sustained in an accident in the course of his employment with Amethyst. For the following reasons, we amend and affirm as amended.

FACTS
Dexter Hatfield was employed with Amethyst as a dump truck driver. On July 13, 2006, he was sitting in his truck with his left hand on the steering wheel waiting for the truck to be loaded by a track hoe. During the loading, the track hoe swung around and slammed into Hatfield's truck, almost tipping it over and jarring his body. Immediately after the accident, the plaintiff experienced pain in his neck radiating into his left arm and later developed pain in his back. The next day, Hatfield went to the emergency room at St. Francis North Hospital with complaints of neck and left arm pain. The emergency room doctor found a decreased range of motion and diagnosed Hatfield with neck pain and left arm pain secondary to "musculoligamentous strain versus herniated nucleus pulposus." Hatfield was instructed to follow up with the hospital's occupational medicine department, which referred him to Dr. Scott McClelland, an orthopedic surgeon.
On August 3, 2006, Dr. McClelland first saw Hatfield and noted his complaints of neck and upper thoracic spine pain with numbness in his left arm and hand. Dr. McClelland ordered MRI scans of Hatfield's cervical and thoracic spine and prescribed pain medication. During Hatfield's next visit on September 25, 2006, Dr. McClelland observed that Hatfield appeared to be in pain and had diminished range of motion in his cervical and thoracic spine along with muscle spasms. Dr. McClelland noted that the MRIs had not been done and prescribed physical therapy.
On October 30, 2006, Dr. McClelland saw Hatfield, who complained of pain along the thoracic and lumbar spine with numbness in the left arm. Dr. McClelland reviewed the MRI results with Hatfield and stated his opinion that the studies showed chronic degenerative changes that would not benefit from further treatment. Dr. McClelland recommended that Hatfield return to a light duty job for one month and then to full duty. After responding to Hatfield's questions about the MRI results and his opinion, Dr. McClelland stated that Hatfield's option was to obtain a second opinion.
On November 13, 2006, Hatfield visited Dr. Brian Coleman, a chiropractor, because of continued pain in his neck and back. Dr. Coleman found muscle spasms in Hatfield's neck and shoulders and noted a thinned disc at the C-6 level. Initially, Dr. Coleman took Hatfield off of work until November 17, 2006, but later extended this order. At his last visit with Dr. McClelland on November 30, 2006, Hatfield complained of worsening pain in his neck and upper back and stated that he had gone to Dr. Coleman for chiropractic treatment. Dr. McClelland repeated his opinion that Hatfield's multilevel disc pathology was a chronic condition that was not indicative of an acute injury and that Hatfield could return to light duty work for one month and to full duty thereafter. Dr. McClelland recommended that Hatfield see another physician who treated spine injuries if he wanted a second opinion. After receiving Dr. McClelland's release *138 of Hatfield to return to work the workers' compensation insurance carrier, CNA, terminated Hatfield's temporary total disability (TTD) benefits and medical expenses on December 14, 2006.
Hatfield continued to seek treatment with Dr. Coleman, who found that Hatfield was unable to work from February 13, 2007, until he recovered from his work injury. CNA refused to pay more than $750 for chiropractic treatment by Dr. Coleman and denied Hatfield's request to see Dr. Bernie McHugh, a neurosurgeon. The claimant, Hatfield, filed a disputed claim for workers' compensation benefits with the Office of Workers' Compensation (OWC). He contended that the defendants, CNA and Amethyst, refused to allow him to see his choice of neurosurgeon and improperly terminated TTD benefits. Claimant then filed a motion for treating physician seeking an order to require CNA to pay for treatment with Dr. McHugh. CNA later agreed to pay for the treatment.
At the OWC hearing, the parties stipulated that the claimant had been employed at Amethyst, that he was involved in a work-related accident, that his average weekly salary was $500, his compensation rate was $333.33 per week, that TTD benefits were paid through December 14, 2006, and that the claimant was currently being treated by Dr. McHugh, at the defendants' expense.
Subsequently, the WCJ issued a ruling and noted that prior to the accident, there was no evidence that the claimant had any difficulty performing his job duties, but after the work injury disabling symptoms appeared and continued to manifest themselves. The court found that the claimant continued to suffer from pain after his release from Dr. McClelland and reasonably sought treatment from Dr. Coleman, who opined in February 2007 that claimant was unable to work. Thus, the WCJ concluded that claimant was entitled to TTD benefits from February 13, 2007, and continuing until he is released to return to work by his current physician along with medical expenses.
In addition, the WCJ found that CNA was arbitrary and capricious in refusing to approve treatment with Dr. Coleman given its failure to obtain available medical records to satisfy any questions regarding the need for such treatment. The WCJ assessed a penalty of $2,000 and attorney fees of $10,000 regarding Dr. Coleman. The WCJ further found that CNA was arbitrary in delaying approval of treatment with Dr. McHugh, contrary to claimant's statutory right to see his choice of a physician in a field of specialty. The court assessed a penalty of $2,000 and $3,500 in attorney fees regarding Dr. McHugh.
The WCJ rendered judgment awarding the claimant TTD benefits from February 13, 2007, continuing until released by his physician, and ordering defendants to pay penalties of $4,000 and attorney fees of $13,500. The defendants were also ordered to pay the balance of Dr. Coleman's medical bill along with necessary medical expenses. The defendants appeal the judgment.

DISCUSSION
The defendants contend that the WCJ erred in awarding claimant TTD benefits. They argue that the claimant failed to prove he was unable to perform any employment based upon Dr. McClelland's opinion that no further treatment was necessary and that claimant was able to return to work.
An employee in a workers' compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. *139 Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689. Factual findings in a workers' compensation case are subject to the manifest error standard of appellate review. In applying this standard of review, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable in light of the entire record. Stobart v. State DOTD, 617 So.2d 880 (La.1993); Player v. International Paper Company, 39,254 (La. App.2d Cir. 1/28/05), 892 So.2d 781.
An employee's pre-existing medical condition does not disqualify his claim if the accident aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394 (La.App.2d Cir.4/7/04), 870 So.2d 515. When an employee proves that before the accident he did not have disabling symptoms, but commencing with the accident the disabling symptoms appeared and manifested themselves thereafter and there is medical or circumstantial evidence indicating a reasonable possibility of a causal connection between the accident and the start of the disabling condition, the work injury is presumed to have aggravated or combined with the pre-existing infirmity to produce his disability. Peveto, supra; Lewis, supra.
In the present case, the claimant testified that immediately after the accident he felt pain in his neck and left arm and sought treatment at the emergency room the following day. Claimant stated that he did not have the neck pain and weakness in the left arm prior to the accident. The record supports the WCJ's finding that before the accident claimant was able to perform his job and afterward the disabling symptoms of neck and back pain appeared and have continued. Thus, the evidence presented shows that claimant's injury was work-related.
To obtain an award of TTD benefits, a claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self employment. LSA-R.S. 23:1221(1); Lewis, supra. A claimant may prove disability through medical and lay testimony. The WCJ must weigh all of the evidence to determine if the claimant has met the burden of proving temporary total disability. Lewis, supra; Atwood v. Ewing Timber, Inc., 34,045 (La.App.2d Cir.12/15/00), 774 So.2d 1140.
When the claimant first saw Dr. McClelland in August 2006, he complained of neck and upper thoracic spine pain with numbness in his left arm and hand. Dr. McClelland initially found tenderness in the muscles of the lower part of the plaintiff's neck and tenderness to palpation in the muscles in the upper thoracic spine. Dr. McClelland also noted that the plaintiff complained of pain and reduced range of motion in his left arm, elbow, and wrist. On September 25, 2006, Dr. McClelland observed that the claimant appeared to be in pain and had diminished range of motion in his cervical and thoracic spine along with muscle spasms.
In 2006, the results of the cervical MRI revealed moderate multilevel spondylitic changes with findings most pronounced at C3-4 and C4-5 with the possibility of an associated disc herniation on the right at C3-4 and central and left paracentral at C4-5. The thoracic MRI showed mild degenerative disc changes with disc bulges in the upper thoracic spine. No true disc herniation was seen. In October 2006, Dr. McClelland opined that the MRI scans of claimant's cervical and thoracic spine showed chronic degenerative changes that were present before the work accident. *140 Dr. McClelland did not feel further treatment would help claimant and recommended that he return to light duty work for one month and full duty thereafter.
In November 2006, the claimant saw Dr. Coleman, who examined claimant and found muscle spasms and a limited range of motion. Initially, Dr. Coleman ordered claimant not to work until November 17, 2006. This work release was extended on February 13, 2007, when Dr. Coleman found that claimant was unable to work because of his job injury. At trial, Dr. Coleman testified that he treated claimant through May 2007 and claimant continued to have significant complaints of neck and back pain at that time. After reviewing an October 2007 MRI of claimant's cervical spine, Dr. Coleman opined that claimant continued to have problems with three of the seven joints in his neck and possibly had a pinched nerve as a result of his work injury. When asked at the trial whether claimant should be working, Dr. Coleman said that the question was difficult to answer because he had not examined claimant since May 2007. Dr. Coleman opined that claimant should not return to his job, but could answer a phone. Regarding the claimant's current condition, Dr. Coleman stated that he would defer to a care provider who had seen claimant since his last chiropractic visit.
In August 2007, the claimant sought treatment with Dr. McHugh, a neurosurgeon, who ordered MRI scans that were performed in October 2007. The cervical MRI showed moderate diffuse spondylosis, apophyseal joint hypertrophy and mild superimposed disc protrusions at the C3-5 and C6-7 levels. There was also cord impingement and encroachment at the neural foramina at each level. The lumbar MRI showed a bulging disk and degenerative changes.
In their brief, the defendants rely on Dr. McClelland's opinion that the degenerative changes shown in the MRI scans were not work related and that claimant could return to work. However, Dr. McClelland's opinion ignored the occurrence of claimant's work injury, which aggravated his pre-existing condition and caused his disabling symptoms. Additionally, in his deposition, Dr. McClelland acknowledged that the herniations at C3-4 and C4-5 could be consistent with trauma from the accident.
The record shows that after being released to return to work by Dr. McClelland, the claimant sought a second opinion. In February 2007, Dr. Coleman found that claimant was unable to work. Dr. Coleman treated claimant until May 2007 and did not release him to work at that time. The claimant is currently being treated by Dr. McHugh, who has not released him to return to work.
The WCJ considered the medical records and weighed the credibility of the witnesses. Based upon the medical evidence and the testimony presented, we cannot say the WCJ erred in concluding that the claimant is unable to engage in any employment and is entitled to temporary total disability benefits. The assignment of error lacks merit.

Medical Expenses
The defendants contend the WCJ erred in finding that the treatment by Dr. Coleman and Dr. McHugh was reasonable and necessary and in awarding medical expenses for that medical treatment. The defendants argue that because the claimant did not secure the consent of CNA before incurring more than $750 in nonemergency medical care from Dr. Coleman, the medical expenses exceeding that amount are not an enforceable obligation.
*141 An employer is obligated to furnish all necessary medical expenses related to a work injury and the claimant may recover those expenses reasonably necessary for the treatment of a medical condition caused by a work-related injury. LSA-R.S. 23:1203; Spence v. Industrial N.D.T., 31,744 (La.App.2d Cir.3/31/99), 731 So.2d 473. A WCJ's determination regarding medical necessity is entitled to great weight and will not be disturbed on appeal in the absence of manifest error. Spence v. Industrial N.D.T., supra.
The defendants contend they are not liable for the claimant's medical expenses incurred for treatment by Dr. Coleman over and above $750 because the claimant failed to obtain approval before incurring medical expenses in excess of that amount. The defendants rely upon LSA-R.S. 23:1142, which provides in pertinent part:
(1) "Payor" shall mean the entity responsible, whether by law or contract, for the payment of the medical expenses incurred by a claimant as a result of a work related injury.
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
* * *
D. Fees and expenses. If the payor has not consented to the request to incur more than a total of seven hundred fifty dollars for any and all nonemergency diagnostic testing or treatment when such consent is required by this Section, and it is determined by a court having jurisdiction in an action brought either by the employee or the health care provider that the withholding of such consent was arbitrary and capricious, or without probable cause, the employer or the insurer shall be liable to the employee or health care provider bringing the action for reasonable attorney fees related to this dispute and to the employee for any medical expenses so incurred by him for an aggravation of the employee's condition resulting from the withholding of such health care provider services.
E. Exception. In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.
Regarding the information necessary to receive prior approval to incur more than $750 in nonemergency care, the defendants also maintain that the claimant did not comply with the utilization review procedure set forth in LAC 40:I.2715.
The defendants stipulated that the claimant was injured at work and agreed to pay TTD benefits to the claimant and medical expenses to Dr. McClelland through December 2006. Based upon Dr. McClelland's opinion that the claimant could return to work, they refused to pay benefits after December 14, 2006. Therefore, because the defendants denied the compensability of the claimant's claim, under LSA-R.S. 23:1142(E) no prior authorization was required before the claimant incurred treatment costs in excess of $750 *142 with Dr. Coleman. See and compare Gary v. H.B. Zachry Company, Inc., 93-581 (La.App. 3rd Cir.2/2/94), 631 So.2d 671, writ denied, 94-0540 (La.4/22/94), 637 So.2d 159; Barron v. First Lake Properties, Inc., 93-902 (La.App. 5th Cir.3/29/94), 636 So.2d 970.
We also observe that Dr. Coleman's office made numerous efforts to obtain prior authorization for the medical expenses incurred and had great difficulty contacting the defendants' claims adjuster. When the adjuster was finally contacted, he asked for Dr. McClelland's medical records, which Dr. Coleman did not have. Based upon these facts, we cannot say that the WCJ erred in awarding medical expenses for the treatment rendered by Dr. Coleman in excess of $750.
The plaintiff has shown that he continued to have physical problems after his treatment with Dr. McClelland and sought relief by going to Dr. Coleman and eventually to Dr. McHugh. Therefore, the medical expenses incurred with these physicians were reasonable and necessary for treatment related to the work injury and the WCJ did not err in awarding medical expenses. The assignments of error lack merit.

Penalties and Attorney Fees
The defendants contend the WCJ erred in awarding penalties and attorney fees in association with their refusal to pay the medical expenses of Dr. Coleman and Dr. McHugh. Defendants argue that their reliance on Dr. McClelland's opinion to deny further medical treatment was not arbitrary.
The employer's failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. LSA-R.S. 23:1201(F). To reasonably controvert a claim, the employer must have sufficient factual or medical information to reasonably counter the evidence provided by claimant. Player v. International Paper Company, supra.
Employers must demonstrate that they made reasonable efforts to medically ascertain the worker's exact condition before denying benefits. An employer has an ongoing duty to review medical reports concerning an injured employee's disability. Tillmon v. Thrasher Waterproofing, 00-0395 (La.App. 4th Cir.3/28/01), 786 So.2d 131.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers' compensation benefits are penal in nature and must be strictly construed. The WCJ has great discretion in awarding or denying penalties and attorney fees. The WCJ's decision concerning whether to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Player v. International Paper Company, supra.
In this case, the defendants' reliance on Dr. McClelland's October 2006 opinion that claimant could return to work was not sufficient to reasonably controvert claimant's disability claim because defendants were placed on notice of a contrary medical opinion in November 2006, when Dr. Coleman found that claimant could not work due to his job injury. The WCJ could reasonably have found that CNA acted capriciously in refusing to pay the chiropractor until he provided the insurer with Dr. McClelland's records, which the insurer presumably already possessed since Dr. McClelland's opinion was the alleged basis for the denial of TTD benefits.
Additionally, CNA did not ask Dr. Coleman for a report describing the treatment *143 of claimant or the status of his condition. In response to the conflicting medical opinions regarding the claimant's work injury, the defendants were required to make an effort to ascertain claimant's medical condition. However, CNA neither asked the claimant to see another doctor of its choice nor petitioned the court for an Independent Medical Examination (IME). Based upon this record, the WCJ's award of penalties and attorney fees for the failure to approve treatment with Dr. Coleman was not an abuse of discretion.
LSA-R.S. 23:1121 provides that an employee has the right to select one treating physician in any field or specialty and is not required to obtain approval for a change to a treating physician in another field or specialty. Contrary to the statute, CNA initially refused to pay for the claimant's visit with Dr. McHugh, a neurosurgeon, despite Dr. McClelland's express recommendation that claimant see a physician who treats spine injuries if he wanted a second opinion. The compensation insurer approved the visit only after claimant filed a disputed claim and a motion requesting court approval of treatment by Dr. McHugh. The insurer's refusal caused a six-month delay between claimant's request and his first visit with Dr. McHugh. Then the adjuster refused to approve the MRI tests ordered by Dr. McHugh until after claimant filed a motion with the court. The only information presented by defendants to counter claimant's request for treatment was Dr. McClelland's report, which actually recommends that claimant see a neurosurgeon for a second opinion if desired. Thus, the WCJ's assessment of penalties and attorney fees for the unreasonable delay in paying for treatment with Dr. McHugh was not an abuse of discretion.
The defendants contend the WCJ erred in awarding attorney fees. The factors to be considered in determining the amount of attorney fees include the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered by the employee and the time devoted to the case. Lewis, supra.
Here, the claimant's counsel secured payment of workers' compensation benefits, obtained payment of Dr. Coleman's bill and approval of Dr. McHugh as claimant's neurosurgeon. In addition, the record shows that claimant's counsel attended several depositions, prepared briefs and motions and appeared at trial. The WCJ made separate awards of attorney fees for a total amount of $13,500. Based upon this record, we conclude that an award of $12,000 in attorney fees is the highest reasonable award that was within the WCJ's discretion.

CONCLUSION
For the foregoing reasons, the judgment of the Office of Workers' Compensation is amended to reduce the award of attorney fees to the amount of $12,000. The judgment is otherwise affirmed. Costs of this appeal are assessed to the appellants, Amethyst Construction, Inc. and CNA Insurance Companies.
AMENDED AND AFFIRMED AS AMENDED.
GASKINS, J., concurs in part and dissents in part.
CARAWAY, J., concurs in part and dissents in part for the reasons assigned by GASKINS, J.
GASKINS, J., concurring in part and dissenting in part.
I respectfully concur in part and dissent in part from the majority opinion. I concur in the award of medical expenses. I dissent from that portion of the majority *144 opinion affirming a continuation of TTD benefits and from the award of penalties and attorney fees.
In order to obtain an award of TTD benefits, a claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self employment. La. R.S. 23:1221(1)(c); Jones v. Hollywood Casino Shreveport, 42,819 (La.App.2d Cir.12/5/07), 972 So.2d 1189.[1] This is the standard of proof which a claimant must satisfy when he files a disputed claim form seeking an award of TTD benefits after the employer or insurer terminates voluntary payments of TTD benefits. To prove a matter by clear and convincing evidence, as required to establish entitlement to TTD benefits, means to demonstrate that the existence of a disputed fact is highly probable, i.e., much more probable than its nonexistence. Jones v. Hollywood Casino Shreveport, supra.
In the present case, there is no dispute that the plaintiff was involved in a work-related accident. Dr. McClelland treated the plaintiff from August through December 2006. He determined that in late October 2006, the plaintiff had achieved maximum medical improvement and could return to light duty for one month followed by a return to full duty in December 2006.
The plaintiff insisted that he was still suffering and unable to return to work due to his injuries. On November 13, 2006, the plaintiff began chiropractic treatment with Dr. Coleman. In Dr. Coleman's opinion, the plaintiff was injured at work and continued to be unable to labor as a dump truck operator as a result of his injuries. Dr. Coleman ordered that the plaintiff not work until November 17, 2006. However, Dr. Coleman testified at the hearing that he extended that order in a letter dated February 13, 2007. Dr. Coleman stated that he treated the plaintiff through May 2007.
Dr. Coleman stated that the plaintiff should not drive a dump truck, but he could perform light duty such as answering a telephone. At the hearing, Dr. Coleman testified:
When you have these problems you're going to have some symptoms along with it. And I can't see where driving a truck will make it better. It can only make it worse. Can he work somewhere else? Can he do something else? I'm sure. I'm sure there's answer a phone. There are jobs out there. It doesn't mean he's totally disabled to do any and everything. [Emphasis supplied.]
*145 After treating for several months with Dr. Coleman, the plaintiff consulted with Dr. McHugh, a neurosurgeon. An MRI ordered by this physician showed that the plaintiff had a minor bulging disc and degenerative changes at the L4-S1 levels. The plaintiff's cervical MRI showed moderate diffuse cervical spondylosis, apophyseal joint hypertrophy and mild superimposed disc protrusions at the C3-5 and C6-7 levels. There was some cord impingement, but no impressive central stenosis. Dr. McHugh's records did not address the issues of whether the work accident impacted the MRI results or whether the plaintiff is temporarily totally disabled.
In finding that the plaintiff showed that he continued to be entitled to TTD benefits, the WCJ relied upon the presumption of causation set forth in Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985). That workers' compensation case held that a claimant's disability is presumed to have resulted from an accident if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of a causal connection between the accident and the disabling condition, or that the nature of the accident, combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.
While Walton is instructive in determining a causal link between an accident and a disabling condition, a higher standard of proof is required to prove entitlement to TTD benefits. La. R.S. 23:1221 requires that entitlement to TTD benefits must be established by clear and convincing evidence, unaided by any presumption of disability, that the claimant is physically unable to engage in any employment or self-employment.
In the present case, Dr. McClelland stated that the plaintiff's problems were degenerative and were not caused by the accident. Dr. McHugh did not offer any opinion as to whether the findings of the plaintiff's MRI were caused by the accident or whether the plaintiff was temporarily totally disabled from engaging in any employment as a result. Dr. Coleman was the plaintiff's strongest witness and found that the work accident was causing the plaintiff's symptoms. However, even Dr. Coleman failed to find that the plaintiff was totally disabled from engaging in any employment or self-employment, even temporarily.
Based upon this record, I believe that the WCJ was manifestly erroneous and clearly wrong in finding that the plaintiff is entitled to a continuation of TTD benefits. Instead, I would remand to the WCJ for a consideration of whether the plaintiff is entitled to supplemental earnings benefits from December 15, 2006 forward.
I also dissent from that portion of the majority opinion affirming an award of penalties and attorney fees in this matter. In the present case, due to the opinion of Dr. McClelland that the plaintiff could return to full duty work, the defendants reasonably controverted the claimant's entitlement to the medical expenses of both Dr. Coleman and Dr. McHugh. Under these circumstances, I believe that the WCJ was manifestly erroneous in awarding penalties and attorney fees in this case.
NOTES
[1] Regarding temporary total disability, La. R.S. 23:1221(1)(c & d) provide:

(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(d) An award of benefits based on temporary total disability shall cease when the physical condition of the employee has resolved itself to the point that a reasonably reliable determination of the extent of disability of the employee may be made and the employee's physical condition has improved to the point that continued, regular treatment by a physician is not required.