DENNIS R. BAGNERIS, SR., Judge.
| ,This is a workers’ compensation case. The employer/defendant, Custom Craft Homes, Inc. (Custom Craft), appeals the judgment in favor of the claimant/employee, Charles Bilquist. The judgment awards Mr. Bilquist temporary total disability benefits, medical benefits, penalties, and attorney fees.
For the reasons that follow, this Court finds that the award of disability benefits, medical benefits, and attorney fees was proper. We agree that although the workers’ compensation judge (WCJ) properly assessed Custom Craft with penalties, the penalties awarded exceeded the statutory *197 limit allowed by La. R.S. 23:1201(F). Therefore, the judgment is amended to assess the statutory maximum penalties. In all other respects, we affirm the judgment as amended.
FACTS AND PROCEDURAL HISTORY
Mr. Bilquist was hired by Gary Arnoult to do carpentry work in connection with framing of a house for construction in the Rigolets Estates subdivision in St. Tammany Parish, Louisiana. Custom Craft was the general contractor. Custom Craft retained Owen Construction Company to actually frame the house. Owen ^Construction then engaged Gary Arnoult, the man who directly hired Mr. Bilquist, to perform some of the work.
On the afternoon of August 4, 2009, Mr. Bilquist and another employee, Chris Beals, were standing on a scaffold. While they were maneuvering a piece of plywood, the scaffold collapsed. Mr. Bilquist and the co-worker fell approximately fifteen to thirty feet. Mr. Bilquist complained of injuries to his head, spine, pelvis, and heel. He was taken to Slidell Memorial Hospital where test results revealed a pelvic fracture. Later, he was transferred to Louisiana Medical Center and Heart Hospital. The hospital’s discharge summary found he had a sacral fracture, a L3 compression fracture, back pain, and degenerative disc disease. He was discharged home with a recommendation for physical therapy, occupational therapy, home health care with crutches, and a wheelchair.
Mr. Bilquist then began treatment with Dr. Joseph Mogan of Omni Healthcare, L.L.C., from August 24, 2009 until April 11, 2011.[1] Dr. Mogan, board certified in physical medicine and rehabilitation, prescribed various pain medications. Mr. Bil-quist described his pain as “hurts as much as you can imagine” during his treatment. Dr. Mogan referred Mr. Bilquist to an orthopedic surgeon and pain management on the last visit of April 11, 2011.
Mr. Bilquist also treated with Dr. James Butler, associated with Southern Spine Care, shortly after the accident. Dr. Butler saw Mr. Bilquist on September 30, 2009, November 20, 2009, and June 15, 2010.[2] He referred Mr. Bilquist to 1^Southern Surgical Hospital for imaging tests involving the spine and the sacrum. Dr. Butler noted that he remained on pain medication, ambulated with a cane, and continued with back and right leg pain. He stated that Mr. Bilquist was not capable of returning to work at that time. Dr. Butler advised that Mr. Bilquist would have a permanent partial disability and speculated that he would reach maximum medical recovery within two months. Dr. Butler last treated Mr. Bilquist on June 15, 2010 for sexual dysfunction issues. He recommended that Mr. Bilquist see an urologist and opined that his sexual dysfunction issues could be related to his lumbar spine or sacral injuries. The report did not address Mr. Bilquist’s ability to return to work.
At some point during his treatment, Mr. Bilquist retained an attorney. That attor *198 ney contacted Custom Craft. Custom Craft retained Gary Kern, of Risksaver, to investigate the claim on its behalf. Mr. Kern obtained signed medical authorizations and some medical records. He received settlement authority; however, the matter did not resolve. Thereafter, Mr. Bilquist’s attorney filed a 1008 dispute form with the Office of Workers’ Compensation Administration (OWCA) on January 15, 2010, seeking workers’ compensation benefits against Custom Craft and Owen Construction.
Custom Craft’s answer denied that Mr. Bilquist was its employee. It argued that Custom Craft had no obligation to pay workers’ compensation benefits ^because Mr. Bilquist was an employee of Arnoult and/or Owen Construction. It relied on a certificate of insurance provided by Ar-noult. The insurance certificate provided that Owen Construction had workers’ compensation insurance for its employees, and moreover, listed Custom Craft as an additional insured.[3]
On January 26, 2011, Mr. Bilquist filed a Motion For Summary Judgment to have Custom Craft declared his statutory employer. Custom Craft entered a stipulation on April 4, 2011, that Mr. Bilquist was its statutory employee.
Also on April 4, 2011, Custom Craft amended its answer to plead the La. R.S. 23:1081 intoxication defense.[4] It based this defense on Mr. Bilquist’s December 2010 deposition testimony wherein he stated that Gary Arnoult had provided marijuana on the job site and that he [Bilquist] had taken two puffs of marijuana on the accident date.
This matter went to trial on April 20, 2011 against Custom Craft.[5] Mr. Bil-quist’s presentation of his case included calling three witnesses, Gary Kern, Gary Arnoult, and himself.
Mr. Kern testified that he was assigned to investigate the claim by parties affiliated with Custom Craft. He admitted that he talked with an attorney who previously represented Mr. Bilquist. He obtained a medical authorization form and recalled receiving records from Slidell Memorial. He said he got authority to make La settlement offer; however, before any decision was made, the 1008 dispute form was filed. Mr. Kern concluded during his investigation that Custom Craft was Mr. Bilquist’s statutory employer. He also believed that Custom Craft authorized the payment of $1,000 for medical management expenses.
Gary Arnoult confirmed that he hired Mr. Bilquist to be a helper. He said that he was present when the accident happened. Mr. Arnoult admitted that he built the scaffold. He claimed that the scaffold did not collapse, but rather, that it was torn from the wall. He acknowledged that OSHA investigated the accident, that he was fined, and that the scaffold did not have guardrails.
On examination by defense counsel, Mr. Arnoult denied that he provided marijuana *199 to Mr. Bilquist on the accident date. He said that he spoke to Mr. Bilquist earlier in the day as to why he was not doing his job correctly. Mr. Bilquist allegedly responded that he was upset because he had learned the day before that he had cancer. Mr. Arnoult claimed that the accident happened because Mr. Bilquist disregarded his instruction not to pick up a piece of plywood that weighed about 100 pounds by himself. When he picked up the plywood, Mr. Arnoult surmised that either Mr. Bil-quist stepped off the scaffold and tore everything down or he let go of it.
On re-examination by Mr. Bilquist’s attorney, Mr. Arnoult acknowledged that he did not actually see the accident. After initially denying any familiarity with marijuana, he also admitted that he had been convicted of possession of marijuana. Mr. Arnoult verified that he never supplied Mr. Bilquist with a written Rcopy of his company’s substance abuse policy or that he was aware of any drug test results. He added that he had no idea what drugs, if any, that Mr. Bilquist took on the accident date.
Mr. Arnoult confirmed that he lacked insurance for this job. He said that because he worked for Owen Construction, it was Owen Construction’s responsibility to supply the insurance. However, he admitted that no certificate of insurance was issued to Owen Construction for this job.
Mr. Bilquist testified that he had a ninth grade education. He taught himself carpentry and had been doing it the last twenty-three years. He said that he was hired by Mr. Arnoult after Mr. Arnoult saw some custom work he had done on a boat.
He worked on the job for a few days before the accident. During this time, he met Lyle Wille, a representative of Custom Craft, and discussed his work. He also said he left work early on the day before the accident for a pre-arranged co-lonoscopy examination. Mr. Arnoult approved the appointment. He said that he was upset that day because he had learned his father had cancer.
On the day of the accident, Mr. Bilquist testified that he was on a scaffold with another worker, Chris Beals. They were attempting to place plywood into a wall. Mr. Bilquist verified that Mr. Arnoult advised him not to lift the plywood by himself. He followed Mr. Arnoult’s advice because the plywood weighed too much for him to lift by himself and then, to try to put it twenty-six feet into the air. Mr. Bilquist stated that when Chris Beals and he picked up the piece of plywood to 17put in the wall, the piece did not fit. The plywood came out and the next thing he knew, the scaffold was collapsing. He fell approximately twenty-five feet, injuring his head, back, pelvis, and feet. He noticed that the scaffold had no handrails or safety harnesses and in general, there was no permanent structure to the scaffold. He said he had nothing to do with the building of the scaffold.
With reference to drug use, he averred that Mr. Arnoult encouraged drug use before the start of the work day, prior to Mr. Wille’s arrival, and also during breaks. He said he took two hits off of a marijuana cigarette that was provided by Mr. Arnoult on the day of the accident. This happened around 7:30 a.m. However, he claimed that the marijuana did not affect his job performance. He pointed out that the accident did not happen until nearly 3:80 p.m.
Mr. Bilquist said he was in significant pain from the fall. He had fractures to his pelvis, spine, and ankle. He verified that he went to Slidell Memorial and then was transferred to Louisiana Heart Hospital. He was in the hospital for only two days *200 because no one would pay. He said he underwent cat scans, MRIs, and ultrasound. He advised that he discontinued treatment with Dr. Butler because the insurance company would not pay. He continued to see Dr. Mogan because his father paid for the treatment.
At the time of trial, he was still on Loricet 10, Soma 350 milligrams, and Rox-ycodone. He alleged that he gets light headed when he stands and has trouble standing and sitting for any long periods of time. He complained of pain and numbness in his toes. He testified that the major things that bother him from this | ^accident include his lower back and his “cervic” area. He also said that his “private” does not work. He testified that he did not believe he could return to work as a carpenter because of the dizziness he experiences and the bending carpentry work requires. He speculated that he might be able to drive a taxi cab for a few hours a day or drive a dump truck. However, he added that he did not think he could do any part-time work at this point and that he needed to be fixed.
On cross-examination, Mr. Bilquist stated that he was in a wheelchair for about four months and in a walker for six months. He admitted that he smoked marijuana on the job on the morning of the accident and that he smoked on his own about a week before the accident. He said that he did not personally make a claim against Owen Construction or Custom Craft for workers’ compensation benefits. However, he thought that his first lawyer made a claim for benefits.
After Mr. Bilquist rested his case, Custom Craft moved for an involuntary dismissal. Its counsel alleged that Mr. Bil-quist was not entitled to compensation pursuant to LSA R.S. 23:1081 because, by his own admission, he was intoxicated. Secondly, Custom Craft argued that Mr. Bilquist’s claims for any penalty and attorney fees should be dismissed because he did not produce evidence that he made a demand for indemnity or medical benefits to Custom Craft. The WCJ denied the motion. The court found that the presumption of intoxication was a rebuttable presumption. Additionally, the court accepted Mr. Bilquist’s argument that at a minimum, the form 1008 was a demand for payment.
|flThe trial continued. Custom Craft called Lyle Wille as its first witness. Mr. Wille stated that he was superintendent for construction for Custom Craft. He met Mr. Bilquist prior to the accident. Mr. Wille advised that he was on the site on the day of Mr. Bilquist’s accident. He did not see the accident, but arrived on the scene shortly thereafter. He said that Mr. Bilquist seemed to be in pain. Mr. Wille remembered that Mr. Bilquist said that his pelvis hurt. He recommended that Mr. Bilquist go to the hospital. Mr. Wille went to Slidell Memorial; however, Mr. Bilquist had not arrived when he got there. He left after about forty-five minutes and said he never saw Mr. Bilquist after the accident date. Mr. Wille never spoke to Chris Beals, the other worker involved in the accident.
Mr. Beals said that shortly before the accident, Mr. Bilquist and he were nailing sheets of plywood into the exterior walls. He claimed that Mr. Bilquist had acted “funny” earlier in the day, but he thought that was because Mr. Bilquist had revealed to Mr. Arnoult that he had cancer. However, at the time that Mr. Bilquist and he were on the scaffold, he said that Mr. Bilquist was doing “fine” until he handled the last sheet of plywood. Mr. Beals asserted that Mr. Bilquist did not wait for him to grab the plywood with him. He alleged that Mr. Bilquist dropped the plywood, which in turn, caused the scaffold to *201 fall. Mr. Beals said he sprained his ankle pretty badly in the fall.
Mr. Beals also claimed that roughly six months later, he went to a waterpark with Mr. Bilquist and his daughter. He testified that Mr. Bilquist did not seem to have any restrictions and that he slid down all the slides.
110When questioned by Mr. Bilquist’s counsel, he said that he did not exactly see what Mr. Bilquist was doing, however, he maintained that he saw Mr. Bilquist drop the plywood. He admitted that he was involved in the building of the scaffolding. He reiterated that Mr. Bilquist was not behaving unusually just before the fall and that everything was fine.
On re-direct, Mr. Bilquist testified that he did not drop the piece of plywood. He stressed that when Chris Beals and he went to put the plywood in place, the scaffold collapsed. With reference to the water park, he said the only thing that he did was sit in a chair and perhaps, make two laps with an inner tube through the lazy river. He strenuously denied riding on any slides.
Before the parties submitted the case, they agreed that Mr. Bilquist’s average weekly wage amounted to $500.00. This wage rate resulted in an indemnity rate of $333.33.
At the conclusion of the trial, the WCJ rendered judgment in Mr. Bilquist’s favor. In his reasons for judgment, the WCJ rejected Custom’s Craft’s intoxication defense. Instead, the WCJ determined that Mr. Bilquist had successfully rebutted the presumption of intoxication. The WCJ credited Mr. Bilquist’s open admission that he had taken two puffs of marijuana. It accepted his testimony that the marijuana did not affect him and cited his co-worker’s testimony that Mr. Bilquist was doing just fine before the accident. The WCJ found Mr. Bilquist credible and believed his account of the accident.
InOn the other hand, the WCJ found that Gary Arnoult was not a credible witness. In discussing Mr. Arnoult’s credibility, the WCJ noted that Gary Arnoult erected the scaffold that OSHA found to be defective and that Arnoult gave Custom Craft a phony certificate of insurance. The WCJ also cited his prior conviction for possession of marijuana. The court questioned whether or- not Mr. Arnoult had a written drug policy and noted that although Mr. Arnoult arrived at the hospital before Mr. Bilquist, he not only failed to request a drug test, but also did not accept responsibility for Mr. Bilquist’s treatment.
The WCJ’s review of the medical records determined that Mr. Bilquist had never gotten the medical treatment as requested by his medical providers. Based on the above factors, the WCJ ordered the following:
IT IS ORDERED, ADJUDGED AND DECREED that Charles Bilquist was injured in a work-related accident on August 4, 2009; that at the time he was a statutory employee of Custom Craft Homes, Inc. and that his rate of pay was $500 per week for a forty hour week, yielding a workers’ compensation indemnity rate of $333.33; and
IT IS FURTHER ORDERED, AND DECREED that Claimant was and is temporarily totally disabled since August 4, 2009 and continuing until found to be at Maximum Medical Improvement by a competent provider of his choosing; and
IT IS FURTHER ORDERED, AND DECREED that all of his outstanding medical charges are to be paid, and any provable out of pocket medical expenses related to the accident of August 4, 2009 are to be reimbursed to him with interest; and
*202 IT IS FURTHER ORDERED, AND DECREED that Bilquist is to undergo a Functional Capacity Examination to determine exactly what his physical capabilities are; and
IT IS FURTHER ORDERED, AND DECREED that Bilquist is to be provided with vocational rehabilitation services to include work-hardening; and
IT FURTHER ORDERED, AND DECREED that Custom Craft Homes, Inc. has failed to reasonably controvert this claim and consequently shall pay tenjthou-sand12 dollars ($10,000.00) in penalties to Claimant and fifteen-thousand dollars ($15,000.00) in attorney fee [sic] to Claimant’s counsel for the successful prosecution of this claim; and all of the above and delineated sums to bear legal interest from the date of the execution of this judgment until paid.
From this judgment, Custom Craft timely lodged this appeal
STANDARD OF REVIEW
In workers’ compensation cases, the appropriate standard of review to be applied by the appellate court to findings of fact by the WCJ is the manifest error-clearly wrong standard. Dean v. Southmark Const., 2003-1051, p. 7 (La.7/6/04), 879 So.2d 112, 117. In applying the manifest error standard of review to factual findings in a workers’ compensation case, an appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was reasonable in light of the entire record. Hatfield v. Amethyst Const., Inc., 43,588, p. 5 (La.App. 2 Cir. 12/3/08), 999 So.2d 133, 139. “When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings [ (sic) ]; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987).
|1sDISCUSSION
Custom Craft raises four assignments of error. They include: 1) the trial court erred in concluding that Charles Bilquist was entitled to temporary total disability benefits in the face of Bilquist’s testimony that he could work; 2) the trial court erred in finding there was no evidence of intoxication despite Bilquist’s testimony that he used marijuana the week of and the day of his accident; 3) the trial court erred by awarding penalties at all and penalties in excess of the statutory limit; and 4) the trial erred in finding Charles Bilquist was entitled to medical care when Bilquist failed to meet his burden of proof that ongoing care was reasonable and necessary. We first consider Custom Craft’s claims that the trial court erred in awarding temporary total disability benefits and medical benefits.
Custom Craft argues that Mr. Bil-quist is not entitled to temporary total benefits or any medical benefits because he did not prove by clear and convincing evidence that he is physically unable to perform any type of employment or that he required ongoing medical treatment. To support this argument, Custom Craft relies on testimony from Mr. Bilquist where he said he might be able to work as a cab driver or a dump truck driver. It also cites that portion of Dr. Butler’s report of November 2009 that said that Mr. Bilquist should reach maximum medical recovery within two months. However, we *203 find these assignments of error lack merit because the evidence adduced at trial offered reasonable support for the WCJ’s finding of temporary total disability and the court’s award of medical benefits.
I ^Custom Craft is correct that a workers’ compensation claimant seeking temporary total disability benefits bears the burden of proving by clear and convincing evidence his inability to engage in any type of employment. Reinhardt v. City of New Orleans (NOPD), 2009-1116, p. 26 (La.App. 4 Cir. 1/13/10), 30 So.3d 229, 244. This Court found in Jackson v. Sysco Food Services, 2005-1304, pp. 1-2 (La.App. 4 Cir. 6/7/06), 934 So.2d 191, 193, that in determining whether a claimant has met his burden of proving by clear and convincing evidence his entitlement to TTD benefits, the hearing officer must weigh both medical and lay evidence. Additionally, the claimant must introduce objective medical evidence to sustain his claim by clear and convincing evidence. Id.
In the present matter, the WCJ clearly accepted Mr. Bilquist’s testimony that the injuries he sustained in the accident kept him in such pain that he was unable to return to any form of work. Although Custom Craft points to Mr. Bilquist’s testimony that he might be able to do part-time work, such as a cab driver or a dump truck driver, Mr. Bilquist qualified those remarks. He clarified that he was unable to do any work at present until he got “fixed.” Mr. Bilquist added that he had not been able to do any work since the accident.
The medical records also supported Mr. Bilquist’s claim that he could not return to work. Diagnostic records showed that Mr. Bilquist sustained significant injuries — a sacral fracture, fracture of the L-3 vertebra, and right foot and heel — injuries that resulted from his work-related accident. He was treated by an orthopedist, Dr. Butler, for these injuries. When Dr. Butler saw him on November |1S20, 2009, he expected Mr. Bilquist to have a permanent partial disability and anticipated that Mr. Bilquist would reach maximum medical improvement within two months. Custom Craft argues that this report means that Mr. Bilquist would have no longer been temporarily totally disabled as of February 2010. However, this interpretation ignores the fact that when Mr. Bilquist was treated on November 20, 2009, Dr. Butler still had Mr. Bilquist on a no-work status. Moreover, it disregards that Dr. Butler never discharged or fully evaluated Mr. Bilquist’s medical or work status because Custom Craft refused to authorize any medical treatment.
Similarly, Dr. Mogan never discharged Mr. Bilquist to return to work. His records indicated that Mr. Bilquist constantly complained of significant pain. In response, Dr. Mogan prescribed pain medication. Mr. Bilquist’s last visit with Dr. Mogan of April 11, 2011, showed that Dr. Mogan had discharged him to an orthopedist and had referred him to pain management.
La. R.S. 23:1203 outlines the employer’s obligation to furnish all necessary medical expenses related to a work injury and the workers’ compensation claimant’s right to recover those expenses reasonably necessary for the treatment of a medical condition caused by a work-related injury. See also Hatfield v. Amethyst, supra. In asking this Court to find that Mr. Bilquist did not prove his entitlement to temporary total disability benefits or medical care, Custom Craft seeks to be rewarded for abdicating its statutory obligation to furnish necessary medical expenses. We decline to do so.
116Based on our review of the record, Mr. Bilquist presented lay and medical evi *204 dence to meet his burden of proof to show he is temporarily totally disabled from any employment and his need for on-going medical care. In contrast, Custom Craft introduced no evidence to contradict Mr. Bilquist’s disability claims. Hence, the WCJ did not err in awarding Mr. Bilquist TTD benefits and in ordering Custom Craft to furnish medical care, including a functional capacity examination and vocational rehabilitation, as mandated by La. R.S. 23:1203.
We next consider Custom Craft’s claim that the WCJ erred in not accepting its intoxication defense. Custom Craft properly notes that Mr. Bilquist’s admission that he smoked marijuana on the accident date created a presumption of intoxication that would preclude his entitlement to compensation benefits. See La. R.S. 23:1081(5). Custom Craft complains that the WCJ rejected this defense solely because there was no drug test to prove Mr. Bilquist’s intoxication. We agree with Custom Craft that it would have been an error of law in the event the WCJ had discounted the intoxication defense on that basis. However, that was not the reason the defense was rejected. Instead, the WCJ found that Mr. Bilquist rebutted the presumption of intoxication.
As previously referenced herein, the WCJ accredited the testimony of Mr. Bil-quist and discredited the testimony of Mr. Arnoult in making the court’s findings as to how the accident happened and whether or not Mr. Bilquist was intoxicated. The WCJ accepted Mr. Bilquist’s account that his use of marijuana did not affect him and did not cause the accident. In support of this accreditation, |17the WCJ referenced the testimony of one of Custom Craft’s witnesses, Chris Beals, who testified that Mr. Bilquist was working just fine before the accident happened. Although Mr. Ar-noult testified that he believed Mr. Bilquist was intoxicated, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Russell v. Orleans Parish School Board, 2005-1358, p. 3 (La.App. 4 Cir. 5/17/06), 933 So.2d 193, 197.
The WCJ made reasonable findings that are supported by the record. Therefore, we cannot say that the WCJ was manifestly erroneous or clearly wrong in deciding that Mr. Bilquist rebutted the presumption of intoxication. See Stenson v. Pat’s of Henderson Seafood, 2011-1148 (La.App. 3 Cir. 2/1/12), 84 So.3d 661.
Custom Craft’s final assignment of error contends that the WCJ erred in awarding any penalties at all, and then, in making an award in excess of the statutory limits. An employer’s failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim.[6] Brown v. Texas-LA *205 Cartage, Inc., 1998-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890. In general, in order to reasonably controvert a claim, the defendant must have some | i8valid reason or evidence upon which to base his denial of benefits. Id. Custom Craft urges that it had valid reasons to controvert Mr. Bilquist’s claim.
It first contends that the claim was reasonably controverted because Mr. Bilquist was a direct employee of Gary Arnoult, who was a framing contractor for Owen Construction. Therefore, Custom Craft argues that Arnoult and/or Owen Construction were responsible for Mr. Bil-quist’s claim. Custom Craft also alleges that the claim was reasonably controverted when it discovered that Mr. Bilquist smoked marijuana on the accident date, which provided it with the affirmative defense of intoxication. We find neither of these arguments persuasive.
By its own admission, Custom Craft was Mr. Bilquist’s statutory employer.[7] Its investigator, Gary Kern, knew during his investigation that Mr. Bilquist was Custom Craft’s statutory employee. At one point, Kern was given settlement authority. Before then, Custom Craft’s supervisor, Mr. Wille, knew Mr. Bilquist worked on its site. He saw Mr. Bilquist right after the accident, observed his injuries, and even went to the hospital. Although Custom Craft failed to stipulate that Mr. Bilquist was its employee until shortly before trial, it had no reason to ever contest its statutory employer status. Therefore, its workers’ compensation obligations as the statutory employer attached from the date of Mr. Bilquist’s accident.
La. R.S. 23:1061(A)(1) allows in part that the statutory employer shall be liable to pay any employee in the execution of the work, any compensation which 113he would have been liable to pay if the employee had been immediately employed by him. Thus, the law imposes upon Custom Craft the same obligation to pay Mr. Bil-quist any compensation owed as if he had been directly hired by Custom Craft. Custom Craft cannot escape its statutory obligation to pay compensation benefits by shifting that responsibility to the direct employer, whether it was Mr. Arnoult or Owen Construction. Our established jurisprudence has long held that under La. R.S. 23:1061, a dispute between a statutory employer and a direct employer with regard to which one owes compensation benefits does not constitute a justifiable basis for withholding benefits from an injured worker. Smith v. Kelly Labor Service, 239 So.2d 685 (La.App. 4 Cir.1970).
Alternatively, Custom Craft attempts to justify its failure to pay benefits based on its intoxication defense. This argument may have had some merit in the event Custom Craft had initially accepted its obligation to pay compensation benefits and then controverted Mr. Bilquist’s right to compensation after it learned he had smoked marijuana on the job. As it were, Custom Craft did not even discover this defense until nearly a year after it had already formally denied compensation benefits on the grounds that Mr. Bilquist was not its employee, and nearly sixteen *206 months after the accident itself. By the time Custom Craft raised the intoxication defense, the maximum allowable penalties had already accrued.
Statutory provisions permitting the assessment of penalties and attorney fees for nonpayment of workers’ compensation benefits are penal in nature and must be strictly construed. Hatfield, 43,588 at pp. 12-13, 999 So.2d at p. 142. However, 120the WCJ’s decision whether to assess statutory penalties and attorney fees will not be disturbed absent an abuse of discretion. Id. In the present matter, Custom Craft knew it was Mr. Bilquist’s statutory employer from the date of the accident. It immediately knew he sustained a work-related accident that prevented him from returning to work. Yet, Custom Craft steadfastly refused to acknowledge that Mr. Bilquist was its employee and to pay any compensation benefits. Accordingly, the WCJ did not err in assessing penalties as Custom Craft did not reasonably controvert Mr. Bilquist’s workers’ compensation claim.
Where the trial court did err, however, is in awarding Mr. Bilquist $10,000.00 in penalties. Mr. Bilquist’s attorney concedes that the maximum penalty allowed under the La. R.S. 23:1201(F) is $8,000.00. Therefore, we amend the judgment to set aside the $10,000.00 penalty and award $8,000.00 in penalties, the maximum allowed by law.
In conjunction with the statutory penalties dispute, Custom Craft maintains that the $15,000.00 awarded in attorney fees was excessive and Mr. Bilquist requests that this Court increase the attorney fee award by $2500.00 to reflect the work done on this appeal by his attorney.
The factors to be considered in determining the amount of attorney fees include the degree of skill and ability executed by the attorney, the amount of the claim, the amount received by the employee, and the time devoted to the case. Hatfield, supra, citing Lewis v. Chateau D'Arbonne Nurse Care Center, 38,394, p. 12 (La.App. 2 Cir. 4/7/04), 870 So.2d 515, 523. Here, claimant’s counsel had to 1 afile a motion for summary judgment to even get Custom Craft to stipulate that it was the statutory employer. The attorney successfully rebutted the intoxication defense; and obtained a judgment to pay on-going temporary total disability benefits and medical benefits. Based on these factors, the WCJ award of $15,000.00 in attorney fees was appropriate.
Mr. Bilquist’s appellate brief represents that he filed an answer to Custom Craft’s appeal wherein he requested an additional attorney fee for the work required by the present appeal. However, our review of the record does not show that an answer was filed. It is well settled that failure to file an answer pursuant to La.Code Civ. P. art. 2133 precludes the appellate court from considering an award of additional fees to compensate counsel for work done on appeal. See Coleman v. Ascension Enterprise, Inc., 2003-1425, p. 6 (La.App. 3 Cir. 4/14/04), 870 So.2d 1159, 1163. Accordingly, this Court cannot act on Mr. Bilquist’s demand for an additional attorney fee because he did not properly request the additional fee by filing an answer to Custom Craft’s appeal.
For the above reasons, the judgment is amended to reduce the penalties to a maximum statutory penalty of $8,000.00. In all other respects, the judgment of the WCJ is affirmed.
AMENDED AND AFFIRMED AS AMENDED

. Mr. Bilquist went to Omni and Dr. Mogan approximately twenty-six times during this period.

. Dr. Butler's clinic notes indicate that Mr. Bilquist was referred to him by his Workman’s Compensation Carrier. Dr. Butler sent copies of his medical records to LA Construction Industry Fund, 1130 W. Causeway Approach, Mandeville, LA 70471 to the attention of Gina Wyble and Ramsey Horn. He referenced claim no. 20090010033571. Dr. Butler also sent a copy of his notes from the June 15, 2010 office visit to American Managed Care, Metairie, La. 70011 to the attention of John Kocke. At trial, Custom Craft stipulated that it was self-insured through the Louisiana Construction and Industry Fund.

. The certificate of insurance was false. Neither Owen nor Arnoult had workers compensation insurance.

. La. R.S. 23:1081(l)(b) provides in part that no compensation shall be allowed for any injury caused by the injured employee’s intoxication at the time of injury unless the employer procured the intoxicating beverage or substance and encouraged its use during the employee's work hours. Additionally, La. R.S. 23:1081(5) states: "(5) If there was, at the time of the accident, evidence of either on or off the job use of a nonprescribed controlled substance as defined in 21 U.S.C. 812, Schedules I, II, II, IV, and V, it shall be presumed that the employee was intoxicated.”

.On April 18, 2011, Mr. Bilquist filed a Motion to Dismiss Without Prejudice of Owen Construction.

. La. R.S. 23:1201(F) provides:
Failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any *205 hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:

. La. R.S. 23:1061(A)(2) provides: A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.